THOMAS A. BUFORD, AK Bar No. 1805046   HONORABLE GARY SPRAKER
CHRISTINE M. TOBIN-PRESSER, AK Bar No. 1905032
RICHARD B. KEETON (admitted *pro hac vice*)
BUSH KORNFELD LLP
601 UNION STREET, SUITE 5000
SEATTLE, WA 98101
Tel: (206) 292-2110
Emails: tbuford@bskd.com, ctobin@bskd.com,
rkeeton@bskd.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA

| | |
|---|---|
| In re | |
| WARDS COVE PACKING COMPANY, LLC, | Lead Case No. 23-00163 (Ch. 11) |
| Debtor. | |
| | Jointly administered with: |
| TOP NOTCH HOLDINGS, LLC, | Case No. 23-00164 (Ch. 11) |
| Debtor. | **DEBTORS' AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION** |

   Wards Cove Packing Company, LLC ("Wards Cove") and Top Notch Holdings, LLC ("Top Notch") (each, a "Debtor" and together, the "Debtors"), propose this Amended Joint Chapter 11 Plan of Liquidation (the "Plan") pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code, providing for liquidation of the Debtors' assets for distribution of Holders of Claims against the Debtors. The Debtors are the proponents of the Plan within the meaning of Bankruptcy Code § 1129.

   The Plan provides for two Classes of Claims and two Classes of Interests. The Plan also provides for the payment of Administrative Claims and Priority Claims. As detailed herein, the Plan provides for administration and liquidation of the Debtors' assets and the distribution of the proceeds thereof to Holders of Allowed Claims in accordance with the priorities set forth in the Bankruptcy Code. The Debtors believe that this will provide a substantially greater recovery than under a liquidation of the Debtors under Chapter 7 of the Bankruptcy Code. Accordingly, the Debtors believe that approval of the Plan is in the best interests of all creditors.

   Reasonable efforts have been made by the Debtors to comply with all Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Alaska ("Local Rules"). Accordingly, the Debtors believe this Plan substantially complies with all applicable Local Rules and Official Form 425A.

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE.  (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)  YOU ARE ENCOURAGED TO READ THIS PLAN IN ITS ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN AND SHOULD REVIEW THIS PLAN CAREFULLY FOR INFORMATION REGARDING THE SPECIFIC TREATMENT OF YOUR CLAIM(S).

THE ONLY REPRESENTATIONS THAT ARE AUTHORIZED OR THAT MAY BE MADE CONCERNING THE DEBTORS OR THE VALUE OF THEIR ASSETS ARE CONTAINED IN THIS PLAN.  THE FINANCIAL INFORMATION CONTAINED HEREIN OR INCORPORATED BY REFERENCE HAS BEEN PREPARED BY THE DEBTORS' MANAGEMENT AND IS EFFECTIVE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED.  THE READER SHOULD NOT INFER OR ASSUME THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF.

FINANCIAL INFORMATION, WHILE PRESENTED WITH NUMERICAL SPECIFICITY WHEN POSSIBLE, IS NECESSARILY BASED UPON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT, ALTHOUGH CONSIDERED REASONABLE AND PRUDENT BY THE DEBTORS, MAY NOT BE REALIZED AND WILL REMAIN SUBJECT TO INHERENT UNCERTAINTIES.  THE FINANCIAL INFORMATION HAS NOT BEEN SUBJECTED TO AN AUDIT AND FOR THAT REASON THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS PLAN IS WITHOUT INACCURACY.  HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY REPRESENTED.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

1

## **TABLE OF CONTENTS**

ARTICLE I. DEFINITION OF TERMS ................................................................4

ARTICLE II. BACKGROUND INFORMATION ...............................................8

   A.  Historical Background and Events Leading to Bankruptcy ......................8

     1.  Formation and Expansion of Debtor Wards Cove .............................8

     2.  Notification of Environmental Liability and Status of Cleanup ...........9

     3.  Purpose of the Chapter 11 Filing. ....................................................11

   B.  Events Since Petition Date......................................................................11

ARTICLE III. ASSETS AND LIABILITIES OF THE DEBTOR.......................12

   A.  Assets ....................................................................................................12

     1.  Schedules ........................................................................................12

       a.  Debtor Wards Cove ...................................................................12

       b.  Debtor Top Notch .....................................................................12

   B.  Liabilities ...............................................................................................13

     1.  Secured Claims ................................................................................13

     2.  General Unsecured Claims ...............................................................13

       a.  Debtor Wards Cove ...................................................................13

       b.  Debtor Top Notch .....................................................................13

ARTICLE IV. CLASSIFICATION OF CLAIMS AND INTERESTS...................13

ARTICLE V. TREATMENT OF UNCLASSIFIED CLAIMS.............................14

ARTICLE VI. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS UNDER THE PLAN ................................................................................................14

ARTICLE VII. MEANS FOR EXECUTION OF THE PLAN ............................15

ARTICLE VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES..................20

ARTICLE IX. PLAN CONFIRMATION ...........................................................20

ARTICLE X. EFFECTS OF CONFIRMATION .................................................22

ARTICLE XI. RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT....................23

ARTICLE XII. MISCELLANEOUS PROVISIONS ...........................................24

ARTICLE XIII. MODIFICATIONS OF THE PLAN ...........................................26

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

# ARTICLE I.
## DEFINITION OF TERMS

The definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

Active Insurers:  U.S. Fire Insurance, St. Paul and Providence.

ADEC:  Alaska Department of Environmental Conservation.

Administrative Claim:  An Allowed Claim entitled to priority under § 507(a)(2) of the Bankruptcy Code, including (a) claims incurred by the Debtors since the Petition Date and allowed by the Court of a type described in § 503(b) of the Code; (b) all Allowed Claims of Professionals pursuant to §§ 330 and 331 of the Code and Bankruptcy Rule 2016; and (c) all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

Allowed Claim:  Any Claim in the amount and of the priority classification set forth in the proof of such Claim that has been filed timely in the Bankruptcy Case, or in the absence of such proof, as set forth in the Debtors' schedules of liabilities filed in the Bankruptcy Case, unless: (i) such Claim has been listed in such schedules as disputed, contingent, or unliquidated, in which case such Claim shall be allowed only in such amount and such classification as is authorized by Final Order of the Bankruptcy Court; (ii) such Claim has been objected to or is objected to after Confirmation, in which case such Claim is authorized by Final Order of the Bankruptcy Court; or (iii) such Claim has been paid in full, withdrawn, or otherwise deemed satisfied in full.

Bankruptcy Code:  Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

Bankruptcy Court:  The United States Bankruptcy Court for the District of Alaska, or in the event such court ceases to exercise jurisdiction over these Chapter 11 Cases, such other court or adjunct thereof that exercises jurisdiction over these Chapter 11 Cases.

Bankruptcy Rules:  The Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States under 28 U.S.C. § 2075, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

Business Day:  Any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in the State of Alaska are required or authorized to close by law or executive order.

Cash:  Cash and cash equivalents, including bank deposits, wire transfers, and checks, representing good funds and legal tender of the United States of America or instrumentalities thereof.

Chapter 11 Cases:  The voluntary chapter 11 bankruptcy cases commenced by Wards Cove and Top Notch, pending before the Bankruptcy Court and jointly administered under Lead Case No. 23-00163.

Chevron:  Shall have the meaning identified in Section II.A.2.b of the Plan.

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

Chignik Property:  The real property identified in Section II.A.2.d of the Plan.

Claim:  Any "claim" as defined in Bankruptcy Code section 101(5), against either Debtor or against any property of either Debtor.

Claims Bar Date:  December 4, 2023, the deadline for filing Proofs of Claim in these Chapter 11 Cases, or any later date as extended by order of the Bankruptcy Court.

Class:  A class of Claims or interests designated pursuant to the Plan.

Class 1 Claim:  Shall have the meaning identified in Section 6.1 of the Plan.

Collateral:  Any asset that is subject to a lien to secure the payment or performance of a Claim, which lien is perfected and not subject to avoidance under the Bankruptcy Code or otherwise invalid or unenforceable under the Bankruptcy Code or applicable non-bankruptcy law.

Confirmation:  The entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

Confirmation Hearing:  The hearing held by the Bankruptcy Court to consider Confirmation of this Plan.

Confirmation Order:  The order of the Bankruptcy Court confirming this Plan.

Consensual Plan:  Shall have the meaning identified in Section 13.2 of the Plan.

Contaminated Properties:  The Chignik Property, the Graveyard Property, the Hoonah Property and the Port Bailey Property.

Cramdown Plan:  Shall have the meaning identified in Section 13.3 of the Plan.

Debtor:  Wards Cove and/or Top Notch, as the case may be, each a debtor and debtor-in-possession in these Chapter 11 Cases.

DIP Loan:  The post-petition loan to be provided by the Lenders to the Debtors, subject to Bankruptcy Court approval.

Disputed Claim:  A Claim that has not been allowed or disallowed by a Final Order, and as to which either: (i) a Proof of Claim has been filed or deemed filed, and the Debtors or another party-in-interest have filed an objection; or (ii) no Proof of Claim has been filed, and the Debtors have scheduled such Claim as disputed, contingent, or unliquidated.

Effective Date:  The first Business Day that is fourteen (14) calendar days following the entry of the Confirmation Order, unless such order is subject to a stay.

Estate:  The estate created for the Wards Cove or Top Notch, as the case may be, pursuant to section 541 of the Bankruptcy Code

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

Estate Property:  Property of the Estate of Debtor Wards Cove and/or Top Notch, as the case may be.

Exculpated Parties:  Shall have the meaning identified in Section 10.2 of the Plan.

Final Decree:  An order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Chapter 11 Cases.

Final Order:  An order or judgment of the Bankruptcy Court entered on the dockets of the Chapter 11 Cases: (i) that has not been reversed, rescinded, stayed, modified, or amended; (ii) that is in full force and effect; and (iii) with respect to which (a) the time to appeal or to seek review, rehearing, remand, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (b) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

Graveyard Property:   The real property identified in Section II.A.2.c of the Plan.

Holder:  A holder of a Claim or Interest, as the case may be.

Hoonah Property:   The real property identified in Section II.A.2.b of the Plan.

Hoonah Active Insurers:  Shall have the meaning identified in Section II.A.2.b of the Plan.

Initial Trust Assets:  Shall have the meaning identified in Section 7.2.1 of the Plan.

IRS:  The Internal Revenue Service.

Interest:  An equity interest in a Debtor.

Lenders:  Collectively, Brindle Investments, LLC; Blair WCP, LLC; Lazy Bay, LLC; Revillagigedo Holdings, LLC; Estate of Barbara Lally; and Catherine Brindle.

Liquidating Trust:  Shall have the meaning identified in Section 7.2.1 of the Plan.

Liquidating Trust Assets:  the assets of the Liquidating Trust.

Liquidating Trust Beneficiary:  A beneficiary of the Liquidating Trust.

Liquidating Trustee:  Shall have the meaning identified in Section 7.2.4 of the Plan.

Nestle:  Shall have the meaning identified in Section 11.A.2.c of the Plan.

Notice and Hearing:  Proceedings as contemplated under Bankruptcy Code § 102(1).

Ordinary Course Administrative Expense:  Shall have the meaning identified in Section 5.1 of the Plan.

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 6

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

Past Costs Agreement:  Shall have the meaning identified in Section II.A.2.e of the Plan.

Petition Date:  September 25, 2023, the date upon which the Debtors commenced their Chapter 11 Cases.

Plan:  This *Amended Joint Chapter 11 Plan of Liquidation*, as such may be modified and amended from time to time.

Port Bailey Property:   The real property identified in II.A.2.a of the Plan.

Port Bailey Wild:  Shall have the meaning identified in Section II.A.2.a of the Plan.

Post-Effective Date Debtors:  The Debtors on and following the Effective Date.

Potential Insurers:  Shall have the meaning identified in Section II.A.2.a of the Plan.

Priority Tax Claim:  An Allowed Claim of a taxing agency for the principal amount of a tax within the meaning of section 507(a)(8) of the Bankruptcy Code, and statutory interest accruing thereon prior to the Petition Date.

Professional:  A person, including a trustee, retained or to be compensated pursuant to sections 326, 327, 328, 330, and/or 1103 of the Bankruptcy Code.

Professional Fee Claim:  Claim of a Professional for compensation or reimbursement of costs and expenses relating to services provided during the period from the Petition Date through and including the Effective Date.

Professional Reserve:  An amount to be determined by the Debtors to be funded upon Confirmation from Estate Property as a reserve from which payment of the fees incurred after the Petition Date, including an estimated amount to pay fees incurred post-Effective Date, of the Debtors' Professionals and the Subchapter V Trustee may be paid.

Proof of Claim:  A proof of claim filed in compliance with Bankruptcy Rule 3003.

Providence:  Providence Washington Insurance Company.

Schedules:  The Bankruptcy Schedules and Statement of Financial Affairs filed with the Bankruptcy Court by each of the Debtors.

Secured Claim:  An Allowed Claim that is a secured Claim against either Debtor determined in accordance with § 506(a) of the Bankruptcy Code.

St. Paul: St. Paul Fire & Marine Insurance Company.

Subchapter V Trustee:  Ms. Virginia Andrews Burdette in her capacity as the subchapter V trustee in these Chapter 11 Cases, pursuant to section 1183 of the Bankruptcy Code.

Substantial Consummation: The Plan shall be substantially consummated upon the occurrence of: (i) the Effective Date; and (ii) the first payment made on a Claim under the Plan.

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

Top Notch:  Debtor Top Notch Holdings, LLC.

Unsecured Claim: An Allowed Claim that is (a) based upon (i) a Proof of Claim executed and timely filed in accordance with Bankruptcy Rule 3003(c), or (ii) the listing of the claim in any of the Debtors' schedules of liabilities as other than disputed, contingent or unliquidated, and (b) not a Secured Claim.

U.S. Fire Insurance:  U.S. Fire Insurance Company, successor to Industrial Indemnity Company.

U.S. Trustee:  The Office of the United States Trustee for the District of Alaska.

Wards Cove:  Debtor Wards Cove Packing Company, LLC.

Wards Cove Member:  Shall have the meaning identified in Section II.A of the Plan.

## ARTICLE II.
## BACKGROUND INFORMATION

### A.    Historical Background and Events Leading to Bankruptcy

### 1.    Formation and Expansion of Debtor Wards Cove

Debtor Wards Cove was formed in the 1920s by brothers Alexander and Harold Brindle operating primarily as a salmon packing company.  The company was later incorporated and ownership has passed down through the generations, such that the current equity holders of Debtor Wards Cove are the children, grandchildren and great-grandchildren of the founders, and certain related entities.[1]

At its peak, Debtor Wards Cove owned and operated salmon canneries throughout Alaska, as well as engaging in pollock processing activities.  In the early 2000s, facing financial pressure, the Debtor Wards Cove exited the salmon canning business and undertook an orderly liquidation of its salmon-related assets.  Debtor Wards Cove continued to hold various parcels of real estate, conduct pollock-related activities, and operate certain general goods stores that had previously catered to fishermen.

---

[1] The following are the members of Wards Cove (each a "Wards Cove Member" and together, the "Wards Cove Members"), along with the membership percentage of each:  Brindle Investments (18.8276%); Blair WCP LLC (18.7426%); Lazy Bay Holdings LLC (18.6670%), Revillagigedo Holdings LLC (18.3898%); Estate of Barbara Lally (15.0461%), Estate of Gregory Brindle (5.1184%), Catherine Brindle (0.9324%), Trevor Lally (0.6889%), Todd Lally (0.6889%), Troy Brindle (0.6889%), Mark Lally (0.6889%), John Lally (0.6889%), Sara Blair (0.2772%), Alec Brindle, Jr. (0.1008%), Natalie Walker (0.1008%), Lance Blair (0.1008%), Kevin Blair (0.1008%), Joel Blair (0.1008%), Mitchell Brindle (0 .0252%) and Michael Brindle (0.0252%).

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

In 2007 and 2008, a number of limited liability companies were formed into which Debtor Wards Cove's Seattle-area real estate holdings and the general store operations were distributed. These assets were then liquidated. At the same time, Debtor Top Notch was formed as a wholly-owned subsidiary of Debtor Wards Cove. All of the Debtors' current real estate holdings are held by Debtor Top Notch and are identified in Exhibit A to this Plan.

In 2011, Debtor Wards Cove sold its business operations, holding back a portion of the sales proceeds for the ultimate wind down of the business. The same year, Debtor Wards Cove was converted from a corporation to a limited liability company.

**2.      Notification of Environmental Liability and Status of Cleanup**

In 2013 and 2016, ADEC notified Debtor Wards Cove that it was liable as an owner or past owner and/or operator on real property upon which environmental contamination had occurred as follows:

a.      Port Bailey Property. Debtor Wards Cove previously owned and operated certain property on Kodiak Island (the "Port Bailey Property") as a cannery through 1998, when it ceased operations. In 2003, Wards Cove sold the property to Port Bailey Wild Enterprises, LLC ("Port Bailey Wild"). Port Bailey Wild and Debtor Wards Cove agreed to a division of costs relating to any required cleanup of the Port Bailey Property, which included a fuel tank farm and containment dike that had been used in the cannery operations. In April 2013, ADEC notified Debtor Wards Cove that Port Bailey Wild was insolvent and that Wards Cove would be responsible for taking the lead in the cleanup of environmental contamination identified at the Port Bailey Property. The Debtors understand that an entity called PB Energy, Inc. now owns the Port Bailey Property and has some common ownership with the now defunct Port Bailey Wild.

After initial contribution by Port Bailey Wild, Debtor Wards Cove funded the environmental remediation efforts. In 2020, ADEC advised Wards Cove that additional clean-up work would be required.

In February 2021, Debtor Wards Cove tendered a claim for the clean-up to a number of insurance companies that had provided insurance coverage to Debtor Wards Cove over the years (the "Potential Insurers"). None of the Port Bailey Potential Insurers accepted the tender.

In July 2021, ADEC requested that the Debtor prepare a new work plan with respect to cleanup of the Port Bailey Property. A draft plan was prepared, estimating $67,404 in additional work and was then under review by ADEC.

To date, Wards Cove has paid approximately $288,610 in costs relating to the site, exclusive of attorneys' fees. The Debtors believe that all funds expended and required to be expended should be reimbursed and/or funded by some or all of the Potential Insurers.

b.      Hoonah Property. Debtor Top Notch is the owner of certain real property in Hoonah, Alaska that was previously operated as a fuel dock and a truck rack loading site. The property encompasses two sites. The first site is referred to as the "Truck Rack Loading Site" and is,

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

in turn, comprised of the "Truck Rack Loading Area" and the "Fuel Pipe Area." The Truck Rack Loading Site is owned by North Pacific Holdings Company and is non-debtor property. The second site is referred to as the "Tank Farm Area." The Tank Farm Area (the "Hoonah Property") is owned by Debtor Top Notch.

In September 2016, ADEC advised the Debtor Wards Cove that it had responsibility for cleanup of environmental contamination identified at the Hoonah Property and Truck Rack Loading Site. Chevron Environmental Management and Real Estate Company ("Chevron") was also advised of responsibility with respect to cleanup of both properties. Wards Cove undertook cleanup of the Truck Rack Loading Site, and Chevron has taken the lead in cleanup efforts with respect to the Tank Farm Area.

Debtor Wards Cove tendered a claim for the clean-up to the Potential Insurers. The Active Insurers accepted the tender subject to a reservation of rights.

ADEC has approved Debtor Wards Cove's remediation of the Truck Rack Loading Site, subject to institutional controls, including monitoring. As of August 17, 2023, ADEC has approved Chevron's submitted work plan relating to the Tank Farm Area.

Debtor Wards Cove has expended $194,438.73 relating to the Hoonah Property and Truck Rack Loading Site cleanup, exclusive of attorneys' fees, $42,206.53 of which has been reimbursed by the Hoonah Active Insurers, to date. Subject to any limitations arising from the Past Costs Agreement, the Debtors believe that all funds expended and required to be expended should be reimbursed and/or funded by some or all of the Potential Insurers.

        c.       <u>Graveyard Point Property</u>. Debtor Top Notch is the owner of certain real property at Graveyard Point in Bristol Bay, Alaska (the "Graveyard Point Property"), formerly owned by Debtor Wards Cove. Prior to Debtor Wards Cove's acquisition decades ago, the property had at some point been operated as a commercial cannery by a separate company, Libby, McNeill & Libby, which is now part of Nestle USA, Inc. ("Nestle"). In March 2016, ADEC advised Debtor Wards Cove that it was liable for cleanup of identified environmental contamination with respect to the Graveyard Point Property. ADEC has also identified Nestle as a responsible party.

Debtor Wards Cove tendered a claim for the clean-up to the Potential Insurers and the Active Insurers accepted the tender, subject to reservation of rights.

Environmental professionals for Debtor Wards Cove and Nestle have identified the steps for remediation; however, a budget for the remediation work has not yet been established.

To date, Debtor Wards Cove has expended $1,123,488.45 relating to the Graveyard Property cleanup, exclusive of attorneys' fees, $37,269.45 of which has been reimbursed by the Graveyard Active Insurers, to date. Subject to any limitations arising from the Past Costs Agreement, the Debtors believe that all funds expended and required to be expended should be reimbursed and/or funded by some or all of the Potential Insurers.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

d.    Chignik Property.  Debtor Top Notch owns real property in the remote fishing village of Chignik, Alaska, formerly owned and operated by Debtor Wards Cove as a fish camp/buying station at which fisherman would bring catch and have weighed before having it transported to other plants.

In January 2016, ADEC advised Debtor Wards Cove of its liability for cleanup of environmental contamination identified on the Chignik Property relating to Debtor Wards Cove's prior operations thereon.  Debtor Wards Cove tendered a claim for the clean-up to the Potential Insurers and the Active Insurers accepted the tender, subject to reservation of rights.

As of March 3, 2022, a work plan for further site characterization had been approved by ADEC and a budget for 2022 implementation was being prepared.  Wards Cove anticipates that the remediation costs due to the remote location would far outweigh the environmental risks presented and would then alternatively propose to seek institutional controls such as fencing and signage to limit site access.

To date, Debtor Wards Cove has expended approximately $348,867.60 relating to the Graveyard Property cleanup, exclusive of attorneys' fees, $54,444.73 of which has been reimbursed by the Active Insurers, to date.  Subject to any limitations arising from the Past Costs Agreement, the Debtors believe that all funds expended and required to be expended should be reimbursed and/or funded by some or all of the Potential Insurers.

e.    Past Costs Agreement.  In addition to the amounts identified as reimbursement with the specific Contaminated Properties supra, in October 2018 Debtor Wards Cove and the Active Insurers participated in a mediation leading to the execution of a Confidential Past Costs Settlement Agreement (the "Past Costs Agreement"), relating to past costs incurred with respect to the Contaminated Properties with the exception of the Port Bailey Property.

**3.    Purpose of the Chapter 11 Filing.**

As noted, the Debtors understand and believe that some or all the Contaminated Property Insurers have a responsibility to reimburse Debtor Wards Cove for the funds that have been expended on cleanup that have not yet been reimbursed and to provide the necessary funds to complete any outstanding cleanup work.  However, Wards Cove has nominal remaining funds and no ability to take the steps necessary to ensure that the insurers comply with their obligations.

In order to facilitate cleanup of the Contaminated Properties, the Wards Cove Members are willing to loan $250,000 to the Debtors as a post-petition loan in the context of a Chapter 11 bankruptcy to fund a trust into which all of the Debtors assets would be contributed and over which a trustee would be appointed to liquidate any assets of value and oversee the insurance claim process to ensure that the funds to which the Debtors are entitled are paid to it, all for the benefit of the Debtors creditors, primarily ADEC.

**B.    Events Since Petition Date**

The Debtors sought and obtained Bankruptcy Court approval to employ Bush Kornfeld LLP as their bankruptcy counsel.

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

On September 28, 2023, the Debtors filed their *Motion to Approve Post-Petition Financing* [Docket No. 18] (the "DIP Motion"), seeking an order of the Bankruptcy Court authorizing the Debtors to borrow up to $250,000.00 from the Lenders (the "DIP Credit Facility").  On November 2, 2023, the Bankruptcy Court entered its *Order Granting Motion to Approve Post-Petition Financing* [Docket No. 37], thereby approving the DIP Credit Facility.

## ARTICLE III.
## ASSETS AND LIABILITIES OF THE DEBTOR

**A.**   **Assets**

**1.**   **Schedules.**  The Schedules reflect that, as of the Petition Date, the Debtors valued their assets as follows:

**a.**   **Debtor Wards Cove**

| Asset | Value |
|---|---|
| Bank accounts | $20,194 |
| Insurance prepayments | $5,711 |
| Accounts receivable (collectible) | $0 |
| Membership interest in Debtor Top Notch | Unknown |
| Office furniture (net book value) | $0 |
| Leasehold interest in 2510 W Casino Road, Suite B, Everett, WA 98204 | Unknown |
| Potential professional negligence and malpractice claims | Unknown |
| Claims against Potential Insurance for coverage and/or reimbursement | Unknown |
| Claims against Port Bailey Wild, PB Energy, Nestle and Chevron for contribution | Unknown |
| Interest in future capital credits of Homer Electric Association, Inc. utility co-op | Unknown |

**b.**   **Debtor Top Notch**

| Asset | Value |
|---|---|
| Bank account | $100 |
| Real Property – 19 separate parcels (*See* **Exhibit A** attached) | Unknown |
| Potential professional negligence and malpractice claims | Unknown |
| Claims against Potential Insurance for coverage and/or reimbursement | Unknown |
| Claims against Port Bailey Wild, PB Energy, Nestle and Chevron for contribution | Unknown |

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

**B.**     __Liabilities__

As set forth in the Schedules, Claims the Debtors understand to be asserted against them as of the Petition Date are as follows:

**1.**     **Secured Claims.**  The Debtors are unaware of any Secured Claims against them.

**2.**     **General Unsecured Claims.**

**a.**     **Debtor Wards Cove.** The primary Unsecured Claims against Debtor Wards Cove are the contingent, unliquidated claims of ADEC with respect to the Contaminated Properties. Additionally, Debtor Wards Cove is aware of asserted Claims for legal services totaling approximately $87,000 and for past-due rent in the amount of $22,705.

As set forth in their Bankruptcy Schedules E/F, the Debtors understand the following entities to assert Claims against in the following amounts:

| Creditor | Claim Amount | Contingent, Unliquidated, or Disputed? |
|---|---|---|
| 3-Tier Alaska Capital, Inc. | $30,281.50 | |
| Alaska Dep't of Envtl. Conservation | $6,214.99 | |
| Alaska Dep't of Envtl. Conservation (shared environmental cleanup liability as to the Contaminated Properties) | Unknown | Contingent, Unliquidated |
| Bush Kornfeld LLP | $7,347.50 | |
| Miller Nash LLP | $73,800.06 | Disputed |
| North Pacific Holdings Co. | $22,705.00 | |
| Tupper Mack Wells PLLC | $6,249.20 | Disputed |

**b.**     **Debtor Top Notch.**  The only Unsecured Claims of which Debtor Top Notch is aware are contingent, unliquidated Claims by ADEC with respect to environmental cleanup obligations arising out of and in relation to the Contaminated Properties owned by Debtor Top Notch.

**ARTICLE IV.**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

Class 1:     Allowed General Unsecured Claims Debtor Wards Cove
Class 2:     Allowed General Unsecured Claims Debtor Top Notch
Class 3:     Allowed Interests in Debtor Wards Cove
Class 4:     Allowed Interests in Debtor Top Notch

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

## ARTICLE V.
## TREATMENT OF UNCLASSIFIED CLAIMS

Section 5.1    **Administrative Claims.**  As defined herein, Administrative Expense Claims are Allowed Claims for costs or expenses of the Chapter 11 Case that are allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code.  Claims incurred in the ordinary course of the Debtors' business following the Petition Date (each, an "Ordinary Course Administrative Claim") shall be paid in the ordinary course of business in accordance with the terms and conditions of the particular agreements governing such obligations.  Unless otherwise agreed to by the Professional, Claims of Professionals shall be paid on the later of the Effective Date or the date each such Claim becomes an Allowed Claim.  Unless the Holder of such Claim agrees to alternative treatment, all Allowed Administrative Expense Claims that have been incurred by the Debtors prior to Confirmation shall be paid on or before the Effective Date of the Plan.

Section 5.2    **Priority Tax Claims.**  As defined under the Plan, Priority Tax Claims are Allowed Claims of taxing agencies that are entitled to priority in accordance with section 507(a)(8) of the Bankruptcy Code.  Priority Tax Claims include the principal portion of the applicable tax and interest accrued thereon through the Effective Date but do not include any penalties.  The Debtors do not believe there are any Priority Tax Claims.

Section 5.3    **DIP Credit Facility Claims.**  If this Plan is not confirmed, amounts owed under the DIP Credit Facility are priority claims that would be paid ahead of general Unsecured Claims.  If this Plan is confirmed, liability for amounts owed under the DIP Credit Facility would be transferred to the Liquidating Trust and would be payable by the Liquidating Trust on a subordinated basis.  DIP Credit Facility Claims would be paid by the Liquidating Trust after general Unsecured Claims are paid in full.

## ARTICLE VI.
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS UNDER THE PLAN

Section 6.1    **Class 1: Allowed General Unsecured Claims – Debtor Wards Cove**

**Impaired.**  Class 1 consists of the Allowed General Unsecured Claims against Debtor Wards Cove (each, a "Class 1 Claim").  On the Effective Date, except to the extent that the Holder of a Class 1 Claim agrees to less favorable treatment, each Holder of a Class 1 Claim shall, in full and complete satisfaction, settlement, release and discharge of its Class 1 Claim, receive, free and clear of any claims, liens, rights or security interests, a pro rata beneficial interest in and right to distribution from the Liquidating Trust.  Such interests in and distributions from the Liquidating Trust shall be pro rata based upon the amount of such Class 1 Claim, relative to the total amount of Class 1 Claims and amounts reserved for disputed Class 1 Claims. Each Holder of a Class 1 Claim shall receive pro rata distributions from the Liquidating Trust until the earlier of (a) receipt of full payment of its Class 1 Claim, plus interest at the Federal Judgment Rate from the Liquidating Trust; and (b) such time as all amounts from the Liquidating Trust have been distributed.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

Section 6.2   **Class 2:  Allowed General Unsecured Claims – Debtor Top Notch**

**Impaired.**  Class 2 consists of the Allowed General Unsecured Claims against Debtor Top Notch (each, a "Class 2 Claim").  On the Effective Date, except to the extent that the Holder of a Class 2 Claim agrees to less favorable treatment, each Holder of a Class 2 Claim shall, in full and complete satisfaction, settlement, release and discharge of its Class 2 Claim, receive, free and clear of any claims, liens, rights or security interests, a pro rata beneficial interest in and right to distribution from the Liquidating Trust.  Such interests in and distributions from the Liquidating Trust shall be pro rata based upon the amount of such Class 2 Claim, relative to the total amount of Class 2 Claims and amounts reserved for disputed Class 2 Claims.  Each Holder of a Class 2 Claim shall receive pro rata distributions from the Liquidating Trust until the earlier of (a) receipt of full payment of its Class 2 Claim, plus interest at the Federal Judgment Rate from the Liquidating Trust; and (b) such time as all amounts from the Liquidating Trust have been distributed.  Notwithstanding the foregoing, to the extent that ADEC holds a Class 2 Claim or Claims and such Claims are duplicative of any Class 1 Claims it holds, it shall only be entitled to recover as the Holder of a Class 1 Claim or a Class 2 Claim with respect to such duplicative Claim, not both.

Section 6.3   **Class 3: Interests in Debtor Wards Cove**

The Interests in Debtor Wards Cove shall remain intact provided, however, that Holders of Interests shall not receive any distribution on account of such Interests.

Section 6.4   **Class 4: Interest in Debtor Top Notch**

The Interests in Debtor Top Notch shall remain intact provided, however, that Holders of Interests shall not receive any distribution on account of such Interests.

Section 6.5   **Impairment of Classes.**  Each Class is impaired under the Plan (each, an "Impaired Class").  Pursuant to the provisions of § 1129(b) of the Bankruptcy Code, in the event an Impaired Class does not accept the Plan, the Debtor requests that the Court confirm the Plan without the consent of such Impaired Class

**ARTICLE VII.
MEANS FOR EXECUTION OF THE PLAN**

Section 7.1   **Revesting.**  On the Effective Date, all Estate Assets of the Debtors shall revest in the applicable Reorganized Debtor, free and clear of all liens and encumbrances and all Claims, rights, interests and entitlements.

Section 7.2   **Liquidating Trust.**

Section 7.2.1   **Establishment of Trust.**  As the Effective Date, a trust shall be created for the benefit of Classes 1 and 2 (the "Liquidating Trust") funded by all of the Estate Property that have revested in the Reorganized Debtors, less (i) amounts required to be paid Holders of Allowed Administrative Claims and Allowed Priority Tax Claims and (ii) the Professional Reserve, and

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

amounts due under the DIP Credit Facility (the "Initial Trust Assets").  The Liquidating Trust Beneficiaries' interests in the Liquidating Trust shall be uncertificated and, subject to applicable law, shall only be transferable upon the death of the applicable Liquidating Trust Beneficiary or pursuant to applicable law.

Section 7.2.2   **Transfer of Trust Assets.**  All of the Initial Trust Assets shall be and shall be deemed to have been transferred into the Liquidating Trust as of the Effective Date.

Section 7.2.3   **Purpose of Liquidating Trust.**  The Liquidating Trust shall be established as a liquidating trust for the primary purpose of monetizing and distributing the Liquidating Trust Assets to the Liquidating Trust Beneficiaries.  In connection with the vesting and transfer of the Estate Property to the Liquidating Trust, any attorney-client privilege, work-product protection or other privilege and immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trust.  The Debtors, the Reorganized Debtors and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, protections and immunities.  The Liquidating Trust will be established and become effective for the benefit of the Liquidating Trust Beneficiaries and for the primary purpose of liquidating its assets in accordance with U.S. Treasury Regulation. § 301.7701-4(d) with no objective to continue to engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidating Trust.  The Debtors and all Holders of Claims and Interests shall be deemed to have adopted and approved the Liquidating Trust.  The purpose of the Liquidating Trust is to (a) liquidate all Liquidating Trust Assets, including pursuing any claims against the Potential Insurers for coverage relating to environmental cleanup of the Contaminated Properties (b) resolve Class 1 and Class 2 Claims and (c) distribute the Liquidating Trust Assets to the Liquidating Trust Beneficiaries.  The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors or the Reorganized Debtors for any purposes other than as specifically set forth herein or in the Liquidating Trust Agreement.  The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust.

Section 7.2.4   **Appointment of Trustee of the Liquidating Trust.**  The trustee of the Liquidating Trust (the "Liquidating Trustee") will be appointed subject to approval by the Bankruptcy Court to take such acts and perform such services provided in the Liquidating Trust, for the purpose of maximizing assets available for distribution to Holders of Allowed Claims.  The Liquidating Trustee shall have the powers and duties set forth in the Liquidating Trust.  The Debtors will seek appointment of Orse & Co. as Liquidating Trustee by a motion to be heard concurrently with the Confirmation Hearing.  The Liquidating Trustee shall have authority to retain, on behalf of the Liquidating Trust, any counsel and/or such other professionals as it deems appropriate at all times.  The Liquidating Trustee will be authorized to perform acts including, but not limited to, making interim and final distributions to the Liquidating Trust Beneficiaries and establishing reserves for use by the Liquidating Trust, as set forth in the Liquidating Trust Agreement, a copy of which is attached hereto as Exhibit B and incorporated into this Plan.  Compensation of the Liquidating Trustee and payment of Liquidating Trust expenses, including payment of the Liquidating Trustee's professionals, shall be as set forth in the Liquidating Trust Agreement and shall be paid exclusively from the Liquidating Trust Assets.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

Section 7.2.5 **Disposal of Liquidating Trust Assets.** After the Effective Date, all property of the Liquidating Trust shall be managed and administered by the Liquidating Trustee in a manner reasonably designed to maximize values. If the Liquidating Trustee determines that it is not in the best interest of the Liquidating Trust Beneficiaries to sell any asset or property or if such asset or property cannot, in the Liquidating Trustee's judgment, be sold in a commercially reasonable manner, the Liquidating Trustee shall have the right to dispose of such property in any manner authorized by law. If the Liquidating Trustee seeks to dispose of property in an manner other than by sale of said property, the Liquidating Trustee shall provide not less than thirty days' notice to Liquidating Trust Beneficiaries and ADEC. If any party objects to such disposal and that objection cannot be resolved, the Liquidating Trustee may seek approval of the Bankruptcy Court for such disposal including, if necessary, seeking the reopening of the Bankruptcy Case. Absent willful misconduct, intentional misconduct, gross negligence or fraud in connection therewith, no party in interest shall have a cause of action against the Liquidating Trustee, the Liquidating Trust, the Debtors or the Reorganized Debtors, or their respective members, managers or professionals arising from or related to the disposition of property in accordance with this section.

Section 7.2.6 **Bankruptcy Court Jurisdiction over Trustee.** The Liquidating Trustee is not a "trustee" within the meaning of the Bankruptcy Code and is not subject to post-confirmation oversight by the U.S. Trustee. To provide oversight of the Liquidating Trustee's actions, the Bankruptcy Court shall retain post-confirmation jurisdiction over the actions of the Liquidating Trustee.

Section 7.2.7 **Distributions from Trust.** The Liquidating Trustee shall make distributions in the following order. First, to Classes 1 and 2 in accordance with Sections 6.1 and 6.2 of the Plan and in accordance with the terms of the Liquidating Trust. Once Class 1 and 2 Claims are paid in full, then second, to payment of amounts due under the DIP Credit Facility. Third, and finally, any funds remaining in the Liquidating Trust after payment of all distributions to creditors and payments of administrative and other expenses required thereunder and by this Plan shall be donated to a Qualifying Charity, as defined in the Liquidating Trust Agreement, attached hereto as **Exhibit B**. The Liquidating Trustee may withhold from any distribution a sum sufficient to pay any required tax or other charge imposed under the income tax laws of the United States or of any state or political subdivision by reason of any distribution provided for in the Liquidating Trust Agreement. To the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all distributions under the Plan shall be subject to such withholding and reporting requirements.

Section 7.2.8 **Transfer Taxes.** Pursuant to Bankruptcy Code § 1146(a), the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, and implementation of, or as contemplated by the Plan, or the vesting, transfer or sale of any Estate Property pursuant to, as part of the implementation of, or as contemplated by the Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, real estate excise tax, or similar tax or fee. Any transfer of Estate Property to the Liquidating Trust shall be exempt from any stamp, real estate transfer mortgage reporting, sales, use or other similar tax to the extent permitted under Bankruptcy Code § 1146(a) and a transfer or sale of the Liquidating Trust Assets by the Liquidating Trustee shall constitute a transfer or sale of Estate

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 17

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

Property pursuant to, as part of the implementation of, or as contemplated by the Plan. Each recorder of deed, or similar official for any city, county, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, accept such instrument without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax, or real estate excise or similar tax.

Section 7.2.9  **Federal Income Tax Treatment.**  The Liquidating Trust will be established for the sole purpose of liquidating and distributing the Liquidating Trust Assets, and any proceeds therefrom, in accordance with U.S. Treasury Regulation section 301.7701.-4(d) and Revenue Procedure 94-45, with no objective to or continue to engage in the conduct of a trade or business. The Liquidating Trust is intended to qualify as a liquidating trust from U.S. federal income tax purposes. In general, a liquidating trust is not a separate taxable entity for U.S. federal income tax purposes, but is instead treated as a grantor trust, i.e., a pass-through entity.  All parties must treat the transfer of the portion of the Liquidating Trust Assets attributable to the Liquidating Trust Beneficiaries as a transfer of such assets directly to the Liquidating Trust Beneficiaries.  Consistent therewith, all parties must treat the Liquidating Trust as a grantor trust of which the Liquidating Trust Beneficiaries are the owners and grantors.  Subject to the terms of the Liquidating Trust Agreement, the value of a Liquidating Trust Beneficiary's Allowed Claim shall be the value of such Liquidating Trust Beneficiary's interest in the Liquidating Trust and the Liquidating Trust Beneficiaries and the Liquidating Trustee must consistently use this valuation for all U.S. federal income tax purposes, including for determining gain, loss or tax basis.

Section 7.2.10  **Claims Objection and Treatment of Disputed Claims**.

(a)  <u>Manner of Objection</u>.  As of the Effective Date, the Liquidating Trustee shall be entitled to object to any Claim asserted by a claimant against either Debtor that has not been Allowed pursuant to the terms of the Plan, in accordance with the Bankruptcy Rules.  The Liquidating Trustee shall acquire and shall be entitled to assert on behalf of each Debtor all defenses, counterclaims and setoffs, whether equitable or legal, of such Debtor to claims held or asserted to be held against such Debtor.  An objection to the allowance of a Claim shall be in writing and shall be filed with the Bankruptcy Court by the Liquidating Trustee.  The objecting party shall prosecute each of its objections to a Claim or Interest until determined by a Final Order unless the objecting party (a) compromises and settles an objection to a Claim or Interest by written stipulation, or (b) withdraws an objection to a Claim or Interest.  Notwithstanding any other provision in the Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim.  The requirement that objections to claims be filed and served no later than 60 days after the Confirmation Order shall apply.

(b)  <u>Reserve and Tax Treatment Thereof</u>.  The Liquidating Trustee may, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), (i) make an election pursuant to Treasury Regulation section 1.468B-9 to treat the reserve as a "disputed ownership fund" within the meaning of that section, (ii) allocate taxable income or loss to the reserve, with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Disputed Claims), and (iii) distribute the assets from the reserve when, and to the extent, such Disputed Claims cease to be Disputed Claims, whether by virtue of

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 18

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

becoming Allowed Claims or otherwise resolved.  The Liquidating Trust Beneficiaries shall bound by such election, if made by the Liquidating Trustee and as such, shall, for U.S. income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

Section 7.2.11 **Securities Law Matters.**  To the extent the interests in the Liquidating Trust are deemed to be "securities," the issuance of such interests under the Plan are exempt pursuant to Bankruptcy Code § 1145 from registration under the Securities Act of 1933, as amended, and any applicable state and local laws requiring the registration of securities.

Section 7.2.12 **Termination of the Liquidating Trust.**

(a)      The Liquidating Trust shall be dissolved no later than five (5) years from the Effective Date, unless the Bankruptcy Court, upon motion made prior to such fifth (5th) anniversary, determines that a fixed period extension, not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes, is necessary to facilitate or complete the recovery on and liquidation of the Liquidating Trust Assets.  Upon the filing of any motion for an extension of the date of dissolution of the Liquidating Trust, such date shall be deemed automatically extended until an order of the Bankruptcy Court is entered with respect to such motion or the motion is withdrawn.

(b)      Subject to Section 7.2.12(a), the Liquidating Trust shall be dissolved after such time as the Liquidating Trustee has:

(i)      Administered all of the Liquidating Trust Assets and made a final distribution to Holders of Class 1 and Class 2 Claims in accordance with the terms of the Plan and the Liquidating Trust Agreement; and

(ii)     Performed all duties required by the Plan and the Liquidating Trust Agreement.

(c)      As soon as reasonably practicable after the final distribution, the Liquidating Trustee shall dissolve the Liquidating Trust pursuant to the Liquidating Trust Agreement.

(d)      Upon dissolution of the Liquidating Trust, the Liquidating Trustee's duties under the Liquidating Trust Agreement and the Plan shall terminate and the Liquidating Trustee shall be discharged.

Section 7.3      **Inconsistency.**  In the event of any inconsistency between the Plan and any exhibit to the Plan or any other instrument created or document created or executed pursuant to the Plan, including the Liquidating Trust Agreement, the Plan shall govern.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

Section 7.4    **Continued Corporate Existence of the Debtors.**  The Debtors shall continue to exist in the jurisdiction and form they existed as of the Petition Date, subject to later dissolution in accordance with Alaska Statutes 10.50.400, 10.50.405 or 10.50.408.

Section 7.5    **Retention of Claims and Causes of Action.**  All rights, claims and causes of action, whether equitable or legal, of either of the Debtors and/or the Estate against any and all persons are reserved for the Debtors and, upon the Effective Date, shall be deemed to have been transferred to the Liquidating Trust, including without limitation all rights, claims and causes of action of the Debtors and/or their Estate arising under §§ 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or under applicable non-bankruptcy law, for the recovery of avoidable preferences, fraudulent transfers or other conveyances.  The Liquidating Trustee shall have the authority to settle Claims and causes of action by third parties against the Debtors and/or their Estate and Claims and causes of action held by either Debtor and/or its Estate against third parties.  The Liquidating Trustee shall provide 20 days' notice of any proposed settlement (the "Settlement Notice Period"), including the terms thereof, to all parties on the official mailing matrix maintained by the Bankruptcy Court.  If no objection to the proposed settlement is served on the Liquidating Trustee within the Settlement Notice Period, the Liquidating Trustee may proceed to settle the Claim or cause of action without Bankruptcy Court approval or a hearing thereon.

**ARTICLE VIII.**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Any insurance contract held by either Debtor for the benefit of such Debtor as of the Petition Date constituting an executory contract shall be assumed by the Debtor and this Plan shall constitute a motion for such assumption.  All other executory contracts of the Debtors shall be deemed rejected upon Confirmation of the Plan.

**ARTICLE IX.**
**PLAN CONFIRMATION**

Section 9.1    **Voting Procedures.**  A ballot to be used for voting your acceptance or rejection of the Plan is being mailed to you together with this Plan.  Holders of Claims and Interests should read the instructions carefully, complete, date and sign the ballot, and transmit it in the envelope enclosed.  IN ORDER TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE INDICATED ADDRESS NOT LATER THAN JANUARY 19, 2024.  FAILURE TO VOTE OR A VOTE TO REJECT THE PLAN WILL NOT AFFECT THE TREATMENT TO BE ACCORDED A CLAIM OR INTEREST IF THE PLAN NEVERTHELESS IS CONFIRMED.

If more than one-half in number of claimants voting and at least two-thirds in amount of the allowed Claims of such claimants in each class of claims vote to accept the Plan, such classes will be deemed to have accepted the Plan.  If at least two-thirds in amount of the shares voted in a class of equity interests are voted to accept the Plan, such Class will be deemed to have accepted the Plan.  For purposes of determining whether a class of Claims or Interests has accepted or rejected the Plan, only the votes of those who have timely returned their ballots will be considered.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

Section 9.2 **Hearing on Confirmation.** The hearing on Confirmation of the Plan has been set for January 26, 2024, at 9:30 a.m. Alaska Time, via ZoomGov, before the Honorable Gary Spraker, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Alaska. The Bankruptcy Court shall confirm the Plan at that hearing only if certain requirements, as set forth in § 1129 of the Bankruptcy Code, subject to the provisions of § 1191 of the Bankruptcy Code are satisfied.

Section 9.3 **Best Interests of Creditors, Liquidation Analysis and Feasibility Requirements.** In order to satisfy certain of the requirements under § 1129, the Debtors must establish that (a) holders of Claims and Interests have accepted the Plan or will receive or retain under the Plan on account of such claim property of a value that is not less than the amount that such holder would receive if the Debtors were to be liquidated under Chapter 7 of the Bankruptcy Code; and (b) that the Plan is not likely to be followed by the Debtors' liquidation.

Bankruptcy Code § 1190(1)(B) provides that the Debtors shall provide a liquidation analysis in its Plan. The Plan provides for liquidation of the Estate Property as described in Section 7 of the Plan until the earlier of such time as (a) Holders of Allowed Claims in Classes 1 and 2 are paid in full; and (b) such time as all Estate Property has been liquidated or abandoned and the proceeds distributed in accordance with this Plan.

Liquidation through a Chapter 11 will allow the Debtor to maximize the proceeds of Estate Property beyond what would be available in a Chapter 7 liquidation. Among other things, sale(s) by the Liquidating Trustee of Debtor Top Notch's real property that has been contributed to the Liquidating Trust will be exempt from transfer tax pursuant to the provisions of Bankruptcy Code § 1146(c). Moreover, the DIP Loan will provide funding for the Liquidating Trustee to pursue coverage from the Potential Insurers that will potentially yield a recovery to Holders of Claims. This funding would not be available in a Chapter 7 bankruptcy.

Section 9.4 **Projections.** Bankruptcy Code § 1190 provides that the Debtors shall provide projections with respect to the Debtors' ability to make payments under the proposed plan of reorganization. Payments under the Plan described in Sections 6.1 and 6.2 will be made from the proceeds of the orderly liquidation of Estate Property, whatever they may be. In short, the Debtors project that the Liquidating Trustee will distribute the proceeds derived from the liquidation of the Estate Property pursuant to the terms of this Plan.

Section 9.5 **Confirmation of Consensual Plan.** The Plan will be confirmed if each Impaired Class votes in favor of the Plan and the Plan complies with the provisions of Bankruptcy Code § 1129(a), with the exception of § 1129(a)(15). This is referred to herein as a "Consensual Plan."

Section 9.6 **Confirmation of Cramdown Plan.** If one or more impaired Classes of Claims does not accept the Plan, in order for the Court to confirm the Plan, the Bankruptcy Court must find that the Plan complies with the provisions of Bankruptcy Code § 1129(a), with the exception of §§ 1129(a)(8), (10) and/or (15), and that the Plan does not discriminate unfairly, and is fair and equitable, as provided in Bankruptcy Code § 1191(c) with respect to each class of claims or interests

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

that is impaired under, and has not accepted, the plan.  This is referred to herein as a "Cramdown Plan."  Bankruptcy Code § 1191(c)(2) provides in order to be fair and equitable, the Plan must provide that either (a) all of the Debtors' projected disposable income for a three-year period or longer period fixed by the Court, not to exceed five years, will be applied to payments under the Plan; or (b) the value of the Property to be distributed under the plan in the three-year period or longer period fixed by the Bankruptcy Court, not to exceed five years, is not less than the projected disposable income of the Debtors.  The Debtors have no projected disposable income, and creditors will receive any value in excess of the Debtors' projected disposable income under the Plan.

Section 9.7    **Tax Consequences of Plan.**  Holders of Claims and Interests will report any payments received under the Plan in accordance with their normal method of accounting.

**ARTICLE X.**
**EFFECTS OF CONFIRMATION**

Section 10.1.    **Injunction.**  Except as otherwise expressly provided for in the Plan or the Confirmation Order and to the fullest extent authorized or provided by the Bankruptcy Code, including sections 524 and 1141 thereof, upon the entry of the Confirmation Order, the Liquidating Trustee and/or each Debtor shall be entitled to the protections afforded them under the Bankruptcy Code, including, without limitation, the injunctions contained in section 524.

Section 10.2    **Exculpation.**

(a)    Scope.  Subject to the occurrence of the Effective Date, neither the Debtors, the Reorganized Debtors or the Liquidating Trustee, or any of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates, and representatives (the "Exculpated Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Cases, the Plan, the pursuit of confirmation of the Plan, the negotiation and consummation of the Plan, or the administration of the Cases and the Plan, the property to be distributed under the Plan, the administration of the Liquidating Trust Assets and the Liquidating Trust by the Liquidating Trustee; provided, however, that the foregoing shall not operate as an exculpation, waiver or release for (i) any express contractual obligation owing by any such person, (ii)  willful misconduct or gross negligence, and (iii) with respect to professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable nonbankruptcy law, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided further that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan; provided further that the foregoing shall not operate as a waiver or release of Claims by governmental entities arising under environmental laws.

(b)    Injunction.  The Confirmation Order will contain an injunction, effective on the Effective Date, permanently enjoining the commencement or prosecution by the Debtors, the Reorganized Debtors, the Liquidation Trustee, and any other person, whether derivatively or otherwise, of any action described by Section 10.2(a) against the Exculpated Parties.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

Section 10.3 **Binding Effect.** The rights, benefits and obligations conferred on any Person by the Plan will be binding upon, and inure to the benefit of, the executors, successors, heirs and assigns of and any Person claiming an Interest in any and all property in which either Debtor and/or the Estate has an interest within the meaning of section 541 of the Bankruptcy Code through such person.

Section 10.4 **Other Documents and Actions.** The Debtors are authorized to execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan.

Section 10.5 **Preservation of Insurance.** Except as necessary to be consistent with the Plan, the Plan and any discharge provided herein shall not diminish or impair the enforceability of insurance policies that may cover Claims against or assets of either Debtor or any other person or entity.

Section 10.6 **Satisfaction of Indebtedness.** The distribution made to the various classes of creditors as provided for in this Plan shall be in full and complete satisfaction of their Allowed Claims and Allowed Interests.

Section 10.7 **Discharge.** To the extent the liquidation of the Estate Property or payment from non-Estate Property as provided herein results in full payment of Allowed Claims, such Estate Property that it has not been necessary to liquidate shall be free and clear of all Claims and Interests. In such event, and upon satisfactory proof of full payment of Allowed Claims, the Court shall enter an order providing for the discharge of the Debtors.

Section 10.8 **Consequences of the Failure to Confirm the Plan.** In the event the Court declines to confirm the Plan, whether due to a failure of creditor support or otherwise, these Chapter 11 Cases may be dismissed or converted to cases under Chapter 7 of the Bankruptcy Code.

## ARTICLE XI.
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

Notwithstanding Confirmation, until entry of a Final Decree, the Bankruptcy Court shall retain jurisdiction to ensure that the purposes and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

1.      Allowing any Claim arising prior to Confirmation as a cost and expense of the administration of the Bankruptcy Case.

2.      Re-examining any Claim that has been Allowed.

3.      Hearing and determining objection to any Claim or Interest arising prior to Confirmation. The failure of a Debtor to object to, or to examine any claim for the purpose of voting, shall not be deemed a waiver of that Debtor's or the Liquidating Trustee's right to object to, or re-examine, any claim in whole or in part.

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 23

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

4. Hearing and determining all causes of action, controversies, disputes, or conflicts between or among a Debtor, the Liquidating Trustee and any other party, including those that were pending prior to Confirmation.

5. Hearing and determining any motions brought by the Liquidating Trustee seeking approval of a proposed sale of an asset of the Liquidating Trust provided, however, that this provision shall not be interpreted to require the Liquidating Trustee to bring such a motion if not otherwise required.

6. Hearing and determining all questions and disputes regarding title to the property of a Debtor, such Debtor's Estate and/or the Liquidating Trust.

7. Correcting any defect, curing any omission, or reconciling any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purpose and intent of the Plan.

8. Issuing any order necessary to implement the Plan or Order of Confirmation, including, without limitation, such declaratory and injunctive orders as are appropriate to protect a Debtor, a Debtor's Estate, the Liquidating Trustee, the Liquidating Trust and/or any of the Exculpated Parties from actions of creditors or other parties-in-interest.

9. Hearing and determining any dispute relating to the terms or implementation of the Plan or Confirmation Order, or to the rights or obligations of any parties-in-interest with respect thereto.

10. The modification of the Plan after Confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code in accordance with Section 14 of the Plan.

11. Actions taken or to be taken by the Liquidating Trustee as provided in Section 7 of the Plan.

### ARTICLE XII.
### MISCELLANEOUS PROVISIONS

Section 12.1 **Unmarked Ballots.** Executed ballots respecting the Plan returned by creditors to the Debtors that do not indicate acceptance or rejection of the Plan shall be deemed and counted as acceptances of the Plan.

Section 12.2 **Administrative Claims Bar Date.** The deadline for submission of all Claims entitled to priority pursuant to §§ 507(a)(1) and (b) of the Bankruptcy Code incurred prior to Confirmation, with the exception of fees and costs of Professionals and Ordinary Course Administrative Expense Claims, shall be thirty (30) days following Confirmation. Failure to file a Proof of Claim by this date shall conclusively bar the claimant from asserting its Claim, which Claim shall be forever discharged.

Section 12.3 **Bar Date for Professionals.** Applications for final approval of compensation for services rendered and reimbursement of expenses incurred by Professionals (a) from the later of

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

the Petition Date or the date on which such Professional's retention was approved through the Effective Date, or (b) at any time during the Bankruptcy Case when such compensation is sought pursuant to sections 503(b)(3) through (b)(5) of the Bankruptcy Code, through Confirmation shall be filed on or before 45 days after the date of Confirmation.

Section 12.4    **Employment of Professionals.**  The Debtors shall be authorized to employ and compensate Professionals following Confirmation upon such terms as the Debtors deem reasonable and appropriate without further order of the Court.

Section 12.5    **Treatment of Negotiable Instruments.**  Any negotiable instrument held by the Holder of an Allowed Claim shall be deemed exchanged, canceled or satisfied, as the case may be, on the Effective Date, except as otherwise provided herein.

Section 12.6    **Stay of Confirmation Order Shall Not Apply.**  The stay of enforceability of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall not apply, and the Confirmation Order shall be enforceable according to its terms immediately upon entry absent further order of the Bankruptcy Court.

Section 12.7    **Severability.**  Should the Bankruptcy Court determine, prior to Confirmation, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable as to all Holders of Claims or Interests or to the specific Holder of such Claim or Interest, as the case may be, as to which the provision is illegal.  Unless otherwise determined by the Bankruptcy Court, such a determination of enforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

Section 12.8    **Governing Law.**  Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the state of Alaska, without giving effect to its conflicts of law principles.

Section 12.9    **Event of Default; Consequence of Default.**  An event of default shall occur if the Post-Effective Date Debtors or Liquidating Trust shall fail to comply with a material provision of this Plan.  In such an event, the party alleging such default shall provide written notice of the alleged default to the Debtors and Liquidating Trustee at the following addresses:

**To the Liquidating Trustee at:**

Eric D. Orse
Orse & Company, Inc.
1932 1st Avenue, Suite 1088
Seattle, WA 98101

With a copy to its counsel:

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 25

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

Brian C. Free
Hillis Clark Martin & Peterson, P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104

**To the Post-Effective Date Debtors at:**

Lance Blair
Wards Cove Packing Company, LLC
2510 W Casino Road, Suite B
Everett, WA 98204

With a copy to its counsel:

Thomas A. Buford
Christine M. Tobin-Presser
Bush Kornfeld LLP
601 Union Street, Suite 5000
Seattle, WA 98101

If, after thirty (30) days following the Debtors' and Liquidating Trustee's receipt of the notice of default, the Liquidating Trustee and such party have been unable to resolve, or the Liquidating Trustee has been unable to cure, the asserted default, such party may proceed with any remedies available to it under applicable law, provided that nothing herein shall limit or affect the Debtors' or Liquidating Trustee's right to seek appropriate relief from any court of competent jurisdiction.

## ARTICLE XIII.
## MODIFICATIONS OF THE PLAN

**Section 13.1    Pre-Confirmation Plan Modification.**  The Debtors may modify the Plan at any time before Confirmation so long as the Plan as modified meets the requirements of Bankruptcy Code §§ 1122 and 1123, with the exception of § 1123(a)(8).  After the modification is filed with the Bankruptcy Court, the Plan as modified becomes the Plan.

**Section 13.2    Post-Confirmation Consensual Plan Modification.**  If the Plan is confirmed as a Consensual Plan, the Debtors may modify the Plan after Confirmation and before substantial consummation so long as the Plan, as modified, continues to meet the requirements of Bankruptcy Code §§ 1122 and 1123, with the exception of § 1123(a)(8).  The Plan, as modified, becomes the Plan only if circumstances warrant the modification and the Bankruptcy Court confirms the Plan, as modified, after Notice and Hearing pursuant to Bankruptcy Code § 1191(a).

*[Remainder of page intentionally left blank]*

DEBTORS' AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION – Page 26

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

Section 13.3    **Post-Confirmation Cramdown Plan Modification.**  If the Plan is confirmed as a Cramdown Plan, the Debtors may modify the Plan after Confirmation and before the expiration of the Plan Period so long as the Plan, as modified, continues to meet the requirements of Bankruptcy Code §§ 1122 and 1123, with the exception of § 1123(a)(8).  The Plan, as modified, becomes the Plan only if circumstances warrant the modification and the Bankruptcy Court confirms the Plan, as modified, after Notice and Hearing pursuant to Bankruptcy Code § 1191(b).

RESPECTFULLY SUBMITTED this 22nd day of December, 2023.

WARDS COVE PACKING COMPANY, LLC

 */s/ Lance P. Blair*
By: Lance P. Blair
Its Authorized Representative

TOP NOTCH HOLDINGS, LLC

 */s/ Lance P. Blair*
By: Lance P. Blair
Its Authorized Representative

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm21sw013w

# EXHIBIT A

Ward Cove Packing Company, LLC (Bankr. D. Alaska Case No. 23-00163)

Top Notch Holdings, LLC (Bankr. D. Alaska Case No. 23-00164)

Exhibit A to Chapter 11 Plan of Liquidation

**<u>Real Property Detail</u>**

1.  Survey # USS-521: 13.07 acres left bank of Nushagak River, S. Naknek (Bristol Bay recording district)

2.  Survey # USS-547: 10 acres New Clarks Point, S. Naknek (Bristol Bay recording district)

3.  Survey # USS-391: 20 acres Igushik, Pat. #273581, Ekuk (Bristol Bay recording district)

4.  Survey # USS-392: 20 acres Igushik, Pat. #273581, Ekuk (Bristol Bay recording district)

5.  Survey # USS-513: 3.49 acres Nushagak Village, Pat. #940658, Ekuk (Bristol Bay recording district)

6.  Survey # USS-514: 11.22 acres Nushagak Village, Pat. #39, Ekuk (Bristol Bay recording district)

7.  Survey # USS-2715: 15.5 acres, Pat. #1209485, Chignik Lagoon (Aleutian Islands recording district)

8.  Survey # USS-2181: 2.67 acres, Pat. #1112661, Chignik (Aleutian Islands recording district)

9.  Survey # USS-2182: 1.03 acres, Pat. #1109267, Chignik (Aleutian Islands recording district)

10. Survey # USS-2183: 2.46 acres, Pat. #1114412, Chignik (Aleutian Islands recording district)

11. Survey # ATS-157: 12.23 acres tidelands, Pat. #122, Chignik Lagoon (Aleutian Islands recording district)

12. Survey # USS-1735: Lots 3 and 4, Block 2; Lots 1, 2 and 3, Block 8; USS 1735, City of Hoonah (Sitka recording district)

13. Survey # USS-538: 17.93 acres Hallerville Cannery Site, Hallerville (Kvichak recording district)

14. Survey # USS-913: 9.16 acres Alagnak River, Lockanok (Kvichak recording district)

15. Survey # USS-523: 28.62 acres Alagnak River, Lockanok (Kvichak recording district)

16. Survey # USS-1106: 17.4 acres Cannery site, Pat. #700322, Koggiung (Kvichak recording district)

17. Survey # USS-00: 1.2 acres Tramway terminal, Pat. #799993 (may have washed away), Koggiung (Kvichak recording district)

18. Survey # USS-71: Reina purchase, Ugashik .97 acre w/permit, West half of USS-71 lot 2, Egegik (Kvichak recording district)

19. Tract A, Sections 8 & 17, T26S R23W, Kodiak (Kodiak recording district)

# EXHIBIT B

# LIQUIDATING TRUST AGREEMENT

This LIQUIDATING TRUST AGREEMENT (the "**Agreement**") is made as of this ___ day of _____, 2023 (the "**Agreement Effective Date**"), by and among Wards Cove Packing Company, LLC and Top Notch Holdings, LLC (together, the "**Debtors**"); and Orse & Company, Inc. in its capacity as the Trust Administrator of the Liquidating Trust (the "**Trust Administrator**," and collectively with the Debtors, the "**Parties**"), pursuant to the Debtors' confirmed Plan (as defined below) and Confirmation Order (as defined below).

## RECITALS

WHEREAS, on September 25, 2023 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Alaska (the "**Bankruptcy Court**"), Case Nos. 23-00163 and 23-00164 (together, the "**Bankruptcy Cases**");

WHEREAS, upon *ex parte* motion by the Debtors in each of the Bankruptcy Cases, on September 26, 2023, the Bankruptcy Court entered its *Order Directing Joint Administration of Debtors' Chapter 11 Cases Pursuant to Bankruptcy Rule 1015(b)* [Docket No. 10 in Case No. 23-00164, with copy entered at Docket No. 11 in Case No. 23-00163], thereby ordering the Bankruptcy Cases be administratively consolidated under the lead case *Wards Cove Packing Company, LLC*, Case No. 23-00163.

WHEREAS, on _____ __, 2023, the Debtors filed their *Joint Chapter 11 Plan of Liquidation* [Docket No. ___] (the "**Plan**") with the Bankruptcy Court;

WHEREAS, on _____ __, 2023, the Bankruptcy Court entered an order [Docket No. ___] (the "**Confirmation Order**") confirming the Plan pursuant to section 1191(_) of subchapter V of the Bankruptcy Code and approving this Agreement;

WHEREAS, on _____ __, 2023 (the "**Effective Date**"), the Effective Date of the Plan occurred and the Plan was substantially consummated;

WHEREAS, the Plan provides for, among other things, the establishment of a liquidating trust (the "**Liquidating Trust**") for the benefit of its Beneficiaries (as defined below) and the appointment of the Trust Administrator, as administrator and manager of the Liquidating Trust;

WHEREAS, the Trust Administrator has agreed to act as administrator under this Agreement for purposes herein provided;

WHEREAS, the Liquidating Trust is established for the sole purpose of administering Liquidating Trust Assets (as defined below), managing and mitigating Liquidating Trust Liabilities (as defined below), and implementing the Liquidating Trust Functions (as defined below), in accordance with Treasury Regulations Section 301.7701-4(d), with no objective or authority to continue or engage in the conduct of a trade or business;

gj11dj0100

WHEREAS, the Liquidating Trust is intended to qualify as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) and, as such, a "grantor trust" for U.S. federal income tax purposes;

NOW, THEREFORE, for and in consideration of the promises and mutual covenants herein contained, pursuant to the Plan, the Parties do hereby covenant and agree as follows:

## ARTICLE I
## Definitions; Interpretive Rules

1.1     <u>Terms Defined in Plan</u>.  Any capitalized term used and not defined herein shall have the meaning ascribed to it in the Plan or Confirmation Order, as applicable. As to any conflict between the Plan and Confirmation Order, the definition in the Confirmation Order shall control.

1.2     <u>Interpretive Rules</u>.  For purposes of this Agreement, except as otherwise expressly provided herein or unless the context otherwise requires: (a) references to "Articles", "Sections", and other subdivisions, without reference to a particular document, are to be designated Articles, Sections, and other subdivisions of this Agreement; (b) the use of the term "including" means "including but not limited to"; and (c) the words "herein", "hereof", "hereunder", and other words of similar import refer to this Agreement as a whole and not to any particular provision (unless otherwise specified).  The enumeration and headings contained in this Agreement are for convenience of reference only and are not intended to have any substantive significance in interpreting this Agreement.  The singular shall include the plural and the plural the singular, when the context so requires, and the feminine, the masculine, and the neuter genders shall be mutually inclusive.

## ARTICLE II
## Establishment of the Liquidating Trust; Appointment of the Trust Administrator

2.1     <u>Establishment of the Liquidating Trust</u>.  Pursuant to the Plan, the Parties hereby establish the Liquidating Trust.  On the Agreement Effective Date, the Liquidating Trust will become effective, in order to carry out the Liquidating Trust Functions (defined below). The Liquidating Trust is organized and established as a trust for the benefit of the Beneficiaries (defined below) and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Sections 301.7701-4(d).  The Liquidating Trust will not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth in the Plan and this Agreement.  This Agreement and the Liquidating Trust created under the Plan are hereby declared to be irrevocable and the Debtors and Post-Effective Date Debtors shall not have any right at any time to withdraw any of the property held hereunder or to revoke, annul, or cancel the Liquidating Trust created under the Plan in whole or in part, or to alter, amend, or modify this Agreement in any respect.

2.2     <u>Appointment of Trust Administrator</u>.  Orse & Company, Inc. is hereby appointed as the Trust Administrator and hereby accepts such appointment. On the Agreement Effective Date and automatically and without further action, the Trust Administrator will have full power and authority as the administrator of the Liquidating Trust in accordance with the Plan and this

gj11dj0100

Agreement to take any and all actions as it believes may be reasonably necessary, desirable, or appropriate with respect to the Liquidating Trust, subject to the terms of the Plan, the Confirmation Order, and this Agreement.

    2.3    <u>Vesting of Liquidating Trust Assets</u>. On the Agreement Effective Date, pursuant to the Plan and the Confirmation Order, the Post-Effective Date Debtors shall transfer, grant, assign, convey, set over, and deliver to the Trust Administrator, for the benefit of the Liquidating Trust, all of the Post-Effective Date Debtors' right, title and interest in the following (collectively, the "**Liquidating Trust Assets**"):

    (a)    Any and all current and future assets of the Debtors, including all real property, tangible personal property, and intangible personal property, including but not limited to instruments, chattel paper, documents, letter of credit rights, accounts, receivables, rents, proceeds, insurance proceeds, deposit accounts, commercial tort claims, intellectual property, general intangibles including payment intangibles, and as-extracted collateral as such terms are defined in the Uniform Commercial Code.

    (b)    Any and all Claims, rights, actions, causes of action, avoidance actions, suits, remedies, sums of money, accounts, bonds, bills, covenants, controversies, variances, rights of setoff, third-party claims, subordination claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, action for substantive consolidation, counterclaims, and cross-claims, damages, or judgments whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise.

    (c)    Funding from the Members of Debtor Wards Cove Packing Company, LLC in the minimum amount of one hundred twenty-five thousand US dollars ($125,000.00), the funding of which is a condition precedent of this Agreement and the creation of the Liquidating Trust.

    2.4    <u>Vesting of Liquidating Trust Liabilities</u>.  On the Agreement Effective Date, pursuant to the Plan and the Confirmation Order, the Post-Effective Date Debtors shall transfer, assign, convey, set over, and deliver to the Trust Administrator, for the benefit of the Liquidating Trust Beneficiaries, all of the Post-Effective Date Debtors' liabilities and obligations with respect to the following (collectively, the "**Liquidating Trust Liabilities**"):

    (a)    Any and all current and future liabilities of the Debtors, including all liabilities arising out of or in relation to any real property, tangible personal property, or intangible personal property, including such liabilities arising out of the past, current, or future actions, conduct, or business operations of the Debtors.

    (b)    Any and all current and future liabilities, obligations, suits, debts, dues, reckonings, covenants, controversies, variances, trespasses, and third-party claims or causes of action against the Debtors or Post-Effective Date Debtors for contribution, reimbursement, indemnity, damages, or judgments whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or

gj11dj0100

undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise.  For the avoidance of doubt, all liabilities, claims (including contribution claims), remediation responsibilities, and other obligations arising under 42 U.S.C. § 9601 *et seq.* (Comprehensive Environmental Response Compensation and Liability Act) ("**CERCLA**") and/or applicable state law shall be transferred and assigned to the Liquidating Trust and for all purposes be deemed Liquidating Trust Liabilities subject to the Plan and this Agreement.

2.5    <u>Trust Name</u>.  The trust created hereby shall be known as the Wards Cove Liquidating Trust, in which name the Trust Administrator may, among other things, carry out the Liquidating Trust Functions, conduct the business of the Liquidating Trust, retain the Trustee Professionals (defined herein) and pay fees and costs incurred by the Trustee Professionals, make and execute contracts on behalf of the Liquidating Trust, sue and be sued on behalf of the Liquidating Trust, and take such other actions as the Trust Administrator is authorized to take under the Plan and this Agreement.

# ARTICLE III
## Liquidating Trust Purpose and Administration

3.1    <u>Purpose of the Liquidating Trust</u>.  The Liquidating Trust shall be established for the purpose of carrying out the Liquidating Trust Functions and liquidating, distributing, and resolving claims to the Liquidating Trust Assets and managing, mitigating, and resolving claims arising out of or in connection with the Liquidating Trust Liabilities, in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  Accordingly, the Trust Administrator shall, in an expeditious but orderly manner, carry out the Liquidating Trust Functions so as to not unduly prolong the duration of the Liquidating Trust.

3.2    <u>Governance of the Liquidating Trust</u>.  The Liquidating Trust shall be administered and controlled by the Trust Administrator.

3.3    <u>Purpose of this Agreement and Liquidating Trust Functions</u>.  The Parties hereby enter into this Agreement for the purposes of establishing the Liquidating Trust contemplated by the Plan and authorizing the Trust Administrator to, among other things, implement and carry out the Liquidating Trust functions as follows: (a) adopt, execute, deliver or file all agreements, reports, certificates, and other documents and instruments necessary or appropriate to implement the provisions of the Plan, the Confirmation Order, and this Agreement; (b) perform the duties, exercise the powers, and assert the rights of a hypothetical trustee under section 1123(b)(3) of the Bankruptcy Code as the Debtors' representative appointed for such purpose, including commencing, prosecuting, or settling all claims and defenses, managing and settling environmental liabilities, claims, remediation responsibilities, and other CERCLA and/or state law environmental obligations, enforcing contracts, asserting claims, defenses, offsets and privileges; (c) to accept, preserve, receive, collect, manage, invest, supervise, prosecute, settle and protect the Liquidating Trust Assets, including remediation of real property as required under CERCLA; (d) liquidate, abandon or otherwise dispose of the Liquidating Trust Assets; (e) calculate and make distributions to holders of Allowed Claims; (f) pay all expenses and make all other payments incurred by and relating to the Liquidating Trust; (g) exercise rights and fulfill

gj11dj0100

obligations under the Plan; (h) review, reconcile, settle or object to Proofs of Claim and resolve such objections; (i) retain and compensate professionals and other entities; (j) file appropriate tax returns and other reports on behalf of the Liquidating Trust and pay taxes or other obligations owed by the Liquidating Trust; (k) object to the closure or dismissal of the Bankruptcy Case; (l) dissolve the Liquidating Trust when appropriate; (m) establish, keep, and maintain a reserve for the benefit of disputed Claims; (n) engage and reasonably compensate the Trustee Professionals (defined herein) to assist the Trust Administrator in carrying out its duties; (o) prepare and deliver any written statements or notices required by law to be delivered to beneficiaries of the Liquidating Trust; and (p) assert the attorney-client privilege or any other privileges (only as to matters vested in the Liquidating Trust) of and on behalf of the Debtors, the Liquidating Trust, and Trust Administrator (collectively, the "**Liquidating Trust Functions**").  All Liquidating Trust Functions and related activities of the Trust Administrator shall be reasonably necessary to, and consistent with, the accomplishment of these purposes.

3.4    <u>Administration of the Liquidating Trust Assets</u>.  From and after the Agreement Effective Date, the Trust Administrator shall take all steps necessary and appropriate to liquidate all Liquidating Trust Assets and distribute the proceeds in accordance with the Plan, Confirmation Order, and this Agreement, including (a) managing, mitigating, and resolving claims arising out of or in connection with the Liquidating Trust Liabilities, including environmental liabilities, claims, remediation responsibilities, and other CERCLA and/or state law environmental obligations; (b) prosecuting, litigating, settling or otherwise liquidating and reducing the Liquidating Trust Assets to money; and (c) abandoning the Liquidating Trust Assets on such terms and for such consideration as it deems to be reasonable and in the best interests of the Beneficiaries.

3.5    <u>Authority of the Trust Administrator</u>. The Trust Administrator shall serve as a fiduciary to the Beneficiaries and will be empowered to perform the Liquidating Trust Functions.

3.6    <u>Expenses of the Liquidating Trust</u>.  The Liquidating Trust Assets will be used to manage, mitigate, and, as appropriate, pay all Liquidating Trust Liabilities, plus costs and expenses of the Liquidating Trust, including compensation then due and payable to the Trust Administrator, the Trustee Professionals (defined herein), and all costs, expenses, and liabilities incurred by the Trust Administrator in connection with the performance of its duties. The reasonable fees and expenses of the Trust Administrator and its Trustee Professionals will be paid without need of Bankruptcy Court approval, subject to the terms set forth in sections 4.13 and 4.14 herein.

3.7    <u>Tax Treatment of Liquidating Trust</u>.  For United States federal and applicable state income tax purposes, the transfer of the Liquidating Trust Assets to the Liquidating Trust pursuant to and in accordance with the Plan shall be treated as a disposition of such assets directly to and for the benefit of the Beneficiaries.  The Liquidating Trust is intended to qualify as a liquidating trust that is treated as a "grantor trust" for federal income tax purposes, and the Trust Administrator shall use its best efforts to operate and maintain the Liquidating Trust in compliance with all applicable guidelines regarding liquidating trusts issued by the Internal Revenue Service (including Revenue Procedure 94-45, 1994-2 C.B. 684); *provided, however*, that the Trust Administrator shall timely elect to treat any Assets allocable to, or retained on

gj11dj0100

account of, disputed Claims (the "**Liquidating Trust Disputed Claims Reserves**") under Treasury Regulations Section 1.468B-9(c)(2)(ii) to treat the Liquidating Trust Disputed Claims Reserve as a "disputed ownership fund." Accordingly, Holders of Allowed Claims that are Beneficiaries shall be treated for U.S. federal income tax purposes (i) as direct recipients of an undivided interest in the assets transferred to the Liquidating Trust and as having immediately contributed such Assets to the Liquidating Trust, and (ii) thereafter, as the grantors and deemed owners of the Liquidating Trust and thus, the direct owners of an undivided interest in the assets held by the Liquidating Trust. The Beneficiaries will be treated as the grantors and owners of the Liquidating Trust. All parties (including the Trust Administrator, the Debtors, the Post-Effective Date Debtors, and the Beneficiaries) shall report United States federal, state, and local income tax purposes consistently with foregoing.

3.8     Incorporation of Plan.  The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

3.9     Cooperation by the Post-Effective Date Debtors. Following the Agreement Effective Date, the Post-Effective Date Debtors will use commercially reasonable efforts to cooperate with and provide assistance to the Trust Administrator as may be reasonably necessary and appropriate in the administration of the Liquidating Trust.

**ARTICLE IV**
**Duties, Rights, and Powers of Trust Administrator**

4.1     Status of the Trust Administrator.  The Trust Administrator shall have the rights of a "trustee" to retain and enforce any claim or interest assigned under, and the rights and powers granted by, this Agreement and in the Plan and Confirmation Order with respect to Liquidating Trust Assets and Liquidating Trust Liabilities.  Except as otherwise set forth in the Plan and Confirmation Order, the Liquidating Trust shall be the successor-in-interest to the Debtors with respect to all Liquidating Trust Assets and Liquidating Trust Liabilities.  All actions, claims, rights or interests constituting Liquidating Trust Assets or Liquidating Trust Liabilities are preserved and retained and may be enforced by the Liquidating Trust as the representative of the Post-Effective Date Debtors.  The Liquidating Trust shall be a party-in-interest as to all matters over which the Bankruptcy Court has jurisdiction and shall be the only party to have standing to file, prosecute, settle, or compromise all Liquidating Trust Assets and Liquidating Trust Liabilities.

4.2     Duties of the Trust Administrator. The Trust Administrator shall have the exclusive right and duty to administer and liquidate the Liquidating Trust Assets, file, prosecute, litigate, compromise, settle, and abandon Liquidating Trust Assets and Liquidating Trust Liabilities, pursue and oversee the objections and resolution of disputed Claims and related processes, collect all income, and make Distributions to the Beneficiaries from the Liquidating Trust, as provided under this Agreement, the Plan, and Confirmation Order.

4.3     Standard of Care.  The Trust Administrator shall exercise its rights and powers vested in it by this Agreement and use reasonable business judgment in its exercise of its duties. Subject to applicable law, the Trust Administrator shall not be liable to the Liquidating Trust or any Beneficiary for any act it may do or omit to do as a Trust Administrator while acting in good

gj11dj0100

faith and in the exercise of its reasonable business judgment. The foregoing limitation on liability will apply equally to the agents, and/or employees of the Trust Administrator and Trustee Professionals (as defined herein) acting on behalf of the Trust Administrator in the fulfillment of the Trust Administrator's duties hereunder.

4.4     <u>Trust Administrator's Rights and Powers</u>.  The Trust Administrator shall have all the powers and authority set forth herein and in the Plan and Confirmation Order necessary to effect the disposition, orderly liquidation, and/or Distribution of all Liquidating Trust Assets and proceeds thereof.  As of the Agreement Effective Date, the rights and powers of the Trust Administrator shall include, subject to any terms and limitations set forth in the Plan or Confirmation Order, the right and power, without further Bankruptcy Court approval, to:

(a)     Implement and carry out the Liquidating Trust Functions;

(b)     Liquidate or otherwise reduce to Cash the Liquidating Trust Assets in accordance with the Plan, Confirmation Order, and this Agreement;

(c)     Maintain and administer the Cash in the Liquidating Trust;

(d)     Pay and satisfy expenses of the Liquidating Trust in accordance with the Plan and this Agreement;

(e)      Upon payment of allowed Administrative Claims, make distributions to Holders of Allowed Claims;

(f)     Enforce, carry out, and comply with the terms of the Plan, Confirmation Order, and this Agreement;

(g)     Pay all expenses and obligations of the Liquidating Trust, including professional fees, out of the Liquidating Trust Assets;

(h)     Retain and compensate counsel or special counsel, financial advisor, and/or accountant, and employ other individuals in connection with the administration or the liquidation, and pay all reasonable and necessary costs of any litigation directly or indirectly involving the Post-Effective Date Debtors or the Liquidating Trust Assets;

(i)     Prepare and deliver written statements or notices required by law or by the terms of this Agreement to be delivered to Beneficiaries;

(j)     If at any time the Trust Administrator determines, in reliance upon such professionals as the Trust Administrator may retain, that the expense of administering the Liquidating Trust so as to make a final distribution to the Beneficiaries is likely to exceed the value of the assets remaining in the Liquidating Trust, the Trust Administrator shall apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to close the Bankruptcy Case, and (ii) donate a balance to a charitable organization exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code of 1986, as amended,  that is unrelated to the Liquidating Trust or the Trust Administrator (a "**Qualifying Charity**");

gj11dj0100

(k)     Hold legal title to any and all rights of the Beneficiaries in or arising from the Liquidating Trust or Liquidating Trust Assets;

(l)     Execute and file any and all documents, regulatory filings and transfer applications and take any and all other actions related to, or in connection with, the liquidation of the Liquidating Trust Assets, the exercise of the Trust Administrator's powers granted herein, and the enforcement of any and all instruments, contracts, agreements, claims, or causes of action relating to the Liquidating Trust, Liquidating Trust Assets, or Liquidating Trust Liabilities;

(m)     Open and maintain bank accounts and deposit funds, draw checks, and make disbursements in accordance with this Agreement and the Plan;

(n)     File, if necessary, any and all tax and information returns with respect to the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) and pay taxes properly payable by the Liquidating Trust, if any, and make Distributions to Beneficiaries net of any such taxes;

(o)     In the event the Trust Administrator determines that any of the Beneficiaries of the Liquidating Trust may, will or has become subject to adverse tax consequences, take such actions that in its reasonable discretion will, or are intended to, alleviate such adverse tax consequences, such as dividing the Liquidating Trust Assets and Liquidating Trust Liabilities into several trusts or other structures and/or paying certain Beneficiaries in a manner different than that originally contemplated hereunder (but not otherwise inconsistent with the provisions of this Agreement or the Plan), *provided, however*, the Trust Administrator shall be under no obligation to take any such actions;

(p)     Withhold from the amount allocable, payable or distributable to any entity such amount as may be sufficient or required to pay any tax or other charge which the Trust Administrator has determined, in its reasonable discretion, is required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof, and to pay or deposit such withheld tax with the appropriate governmental authority.  In the exercise of its discretion and judgment, the Trust Administrator may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions hereof;

(q)     Seek any relief from or resolution of any disputes concerning the Plan as it pertains to the Liquidating Trust, Liquidating Trust Assets, or Liquidating Trust Liabilities by the Bankruptcy Court or any other court with proper jurisdiction;

(r)     Appear and participate in any proceeding before the Bankruptcy Court or any other court with proper jurisdiction with respect to any matter regarding or relating to this Agreement, the Plan, Confirmation Order, Liquidating Trust, Liquidating Trust Assets, or Liquidating Trust Liabilities;

(s)     Otherwise take such other actions as shall be necessary or appropriate to implement the Plan, Confirmation Order, the terms of this Agreement, wind down the affairs of

gj11dj0100

the Trust Administrator and effect the closing of the Bankruptcy Case or to carry out the Liquidating Trust Functions and related obligations and to exercise its rights in accordance with and subject to the Plan and Confirmation Order, and shall perform all of the duties, responsibilities, and obligations as set forth in this Agreement; and

(t)     Terminate the Liquidating Trust in accordance with Article X hereof.

4.5     Estimation of Claims. The Trust Administrator may at any time request that the Bankruptcy Court estimate any Claim pursuant to section 502(c) of the Bankruptcy Code to the extent that such Claim has not already been adjudicated by the Bankruptcy Court on the same grounds.  In the event that the Bankruptcy Court estimates any Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Trust Administrator may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.

4.6     Limitations on the Trust Administrator's Liabilities.  The Trust Administrator and its Trustee Professionals (defined below) shall not be responsible and shall not have any liability whatsoever to any person for any loss or liability the Debtors, the Post-Effective Date Debtors, or the Liquidating Trust may sustain or incur, except as otherwise provided in Section 4.10 of this Agreement.

4.7     Selection of Agents.  The Trust Administrator may select and employ, and determine compensation for, any professionals, including accountants, financial advisors, legal advisors, brokers, consultants, custodians, investment advisors, asset services, auditors, and other agents, as the Trust Administrator deems necessary (collectively, the "**Trustee Professionals**") to assist it in carrying out its duties, with the reasonable fees and expenses of such professionals to be paid by the Liquidating Trust.  The Trust Administrator shall not be liable for any loss to the Debtors, the Post-Effective Date Debtors, or the Liquidating Trust or any person interested therein, including Beneficiaries, by reason of any mistake or default of any such Trustee Professional.

4.8     Signature.  As of the Agreement Effective Date, the Trust Administrator shall have the signature power and authority on behalf of the Liquidating Trust to (a) open and close accounts with any banking, financial or investment institution; (b) make deposits and withdrawals of Cash and other property into or from any such account; (c) make or endorse checks with respect to any such account; and (d) effectuate purchases and sales of securities and give security purchase and sale orders to brokers or any other third parties, and the exercise of such power and authority shall be deemed to be authorized by and to represent the decision of the Trust Administrator then entitled to make such decision.

4.9 Maintenance of Register.  The Trust Administrator shall at all times maintain or cause to be maintained a register of the names, addresses, and Claim amount of the Beneficiaries.

gj11dj0100

4.10    Liability of Trust Administrator.

(a)    Liability; Indemnification.    The Trust Administrator and the Trustee Professionals shall not in any way be liable for any acts or omissions to act except by reason of their gross negligence, willful misconduct, fraud, or a criminal act in the performance of their duties under the Plan, Confirmation Order, or this Agreement. Except as provided for in the preceding sentence:

(i)    The Liquidating Trust shall indemnify the Trust Administrator and the Trustee Professionals, and hold them harmless from and against any and all liabilities, expenses, claims, damages and losses incurred by them as a direct result of actions taken or omissions to act by them in such capacity or otherwise related to this Agreement or the Liquidating Trust.

(ii)    The Liquidating Trust shall indemnify and hold harmless any entity who was, or is, a party, or is threatened to be made a party, to any pending or contemplated action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such entity is or was the Trust Administrator or Trustee Professional against all costs, expenses, judgments, fines and amounts actually and reasonably incurred by such entity in connection with such action, suit or proceeding, or the defense or settlement of any claim, issue or matter therein, to the fullest extent permitted by applicable law, unless such costs and expenses, judgments, fines or amounts paid are found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted from the entity's gross negligence, willful misconduct, fraud, or criminal act.

(b)    Costs or expenses incurred by any entity entitled to the benefit of the provisions of this Section 4.10 in defending any such action, suit or proceeding may be paid by the Liquidating Trust in advance of the institution or final disposition of such action, suit or proceeding, if authorized by the Trust Administrator, subject to providing an undertaking to repay all such advanced amounts if it is subsequently determined that such entity is not entitled to indemnification under this Section 4.10.  Any dispute regarding such indemnification of the Trust Administrator shall be resolved only by the Bankruptcy Court, which shall retain jurisdiction over matters relating to the indemnification provided under this Section 4.10. The Trust Administrator may in its discretion purchase and maintain insurance on behalf of any entity who is or was a beneficiary of this provision.  Promptly after receipt by an indemnified party or parties (the "**Indemnified Party**") of notice of any claim, or notice of commencement of any action, suit, or proceeding by an entity other than the Trust Administrator, in respect of which the Indemnified Party may seek indemnification from the Liquidating Trust pursuant to this Section 4.10, the Indemnified Party, if not the Liquidating Trust, shall notify the Trust Administrator of such claim, action, suit or proceeding and shall thereafter promptly convey all further communications and information in respect thereof to the Trust Administrator.   If the Indemnified Party is the Trust Administrator, the Trust Administrator shall notify the Bankruptcy Court of such claim, action, suit, or proceeding and shall thereafter promptly convey all further communications and information in respect thereof to the Bankruptcy Court. The Trust Administrator shall, if it so elects, have sole control at the expense of the Liquidating Trust over the contest, settlement, adjustment, or compromise of any claim, action, suit, or proceeding in

gj11dj0100

respect of which this Section 4.10 requires that the Liquidating Trust indemnify the Indemnified Party. If the Trust Administrator is the Indemnified Party, it shall obtain the approval of the Bankruptcy Court before settling, adjusting, or compromising any claim, action, suit, or proceeding in respect of which this Section 4.10 requires that the Liquidating Trust indemnify the Indemnified Party. The Indemnified Party shall cooperate with the reasonable requests of the Trust Administrator in connection with such contest, settlement, adjustment, or compromises, provided that (i) the Indemnified Party may, if it so elects, employ counsel at its own expense to assist in (but not control) the handling of such claim, action, suit, or proceeding, (ii) the Trust Administrator shall obtain the prior written approval of the Indemnified Party before entering into any settlement, adjustment, or compromise of such claim, action, suit, or proceeding, or ceasing to defend against such claim, action, suit, or proceeding, if pursuant thereto or as a result thereof injunction or other relief would be imposed upon the Indemnified Party, and (iii) the Indemnified Party shall obtain the prior written approval of the Trust Administrator, or, if the Trust Administrator is the Indemnified Party, the prior approval of the Bankruptcy Court, before entering into any settlement, adjustment or compromise of such claim, action, suit, or proceeding, or ceasing to defend against such claim, action, suit, or proceeding, and no such settlement, adjustment, or compromise shall be binding on the Liquidating Trust without such approval.

(c)   <u>No Liability for Acts of Predecessor</u>. No successor Trust Administrator shall be in any way responsible for the acts or omissions of any Trust Administrator in office prior to the date on which such person becomes a Trust Administrator, nor shall such successor be obligated to inquire into the validity or propriety of any such act or omission, unless such successor Trust Administrator expressly assumes such responsibility. Any successor Trust Administrator shall be entitled to accept as conclusive any final accounting and statement of the Liquidating Trust Assets furnished to such successor Trust Administrator by such predecessor Trust Administrator and shall further be responsible only for those Liquidating Trust Assets included in such statement.

(d)   <u>No Implied Obligations</u>. The Trust Administrator shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, in the Plan and Confirmation Order, and no other or further covenants or obligations shall be implied into this Agreement. The Trust Administrator shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties herein or in any documents or instrument evidencing or otherwise constituting a part of the Liquidating Trust Assets or Liquidating Trust Liabilities. The Trust Administrator makes no representations as to the value of the Liquidating Trust Assets or Liquidating Trust Liabilities or any part thereof, nor as to the validity, execution, enforceability, legality, or sufficiency of this Agreement; and the Trust Administrator shall incur no liability or responsibility with respect to any such matters.

(e)   <u>Reliance by Trust Administrator on Documents or Advice of Counsel or Other Entities</u>. Except as otherwise provided herein, the Trust Administrator may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, and other paper or document reasonably believed to be genuine and to have been signed or presented by the proper party or parties, and shall have no liability or

gj11dj0100

responsibility with respect to the form, execution, or validity thereof.  None of the provisions hereof shall require the Trust Administrator to expend or risk its own funds or otherwise incur financial liability or expense in the performance of any duties hereunder.

(f)    No Personal Obligation for Debtors' Liabilities.  Beneficiaries or other persons dealing with the Trust Administrator in its capacity as Trust Administrator within the scope of this Agreement shall look solely to the Liquidating Trust Assets to satisfy any liability incurred by the Trust Administrator to such person in carrying out the terms of this Agreement, and the Trust Administrator and all Beneficiaries shall have no personal or individual obligation to satisfy any such liability.

4.11    Establishment of Trust Accounts.  The Trust Administrator shall establish and maintain segregated accounts in connection with carrying out the purposes of the Liquidating Trust (the "**Trust Accounts**").  Such accounts bear a designation clearly indicating that the funds deposited therein are held for the benefit of the Liquidating Trust.

4.12    Tax Returns.  From and after the Agreement Effective Date, to the extent required, the Trust Administrator shall be responsible for the preparation and filing of any and all tax returns or other filings as required by law to be filed on behalf of the Liquidating Trust.  Such returns shall be consistent with the treatment of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) that is a grantor trust pursuant to Treasury Regulations Section 1.671-4(a), and to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.

4.13    Compensation for Trust Administrator.  The Trust Administrator shall be compensated from the Liquidating Trust Assets, on a monthly basis to the extent of available funds, fair and reasonable compensation at the rate of three hundred and fifty dollars ($350.00) per hour, calculated and recorded at one-tenth ($1/_{10}$) hour increments.

4.14    Reimbursements.  The Trust Administrator and Trustee Professionals shall be reimbursed from the Liquidating Trust Assets for all reasonable out-of-pocket expenses incurred in the performance of their duties hereunder in addition to any compensation received pursuant to this Agreement.

**ARTICLE V**
**Beneficiaries**

5.1    Identification of Beneficiaries.  The Liquidating Trust is created for the benefit of Holders of Claims, to the extent each are determined or deemed to hold an Allowed Claim(s) in the Bankruptcy Case (the "**Beneficiaries**") and under the terms and conditions set forth in this Agreement.  The Beneficiaries shall each have an undivided beneficial interest in the assets of the Liquidating Trust ("**Beneficial Interest**").  All distributions to Beneficiaries shall be made in accordance with the terms of the Plan, Confirmation Order and this Agreement.

5.2    Rights of Beneficiaries.  Each Beneficiary shall be entitled to participate in the rights due to a Beneficiary hereunder.  Each Beneficiary shall take and hold its Beneficial Interest subject to the terms and provisions of this Agreement and the Plan.  The Beneficial

gj11dj0100

Interests shall not be certificated. The interest of a Beneficiary is in all respects personal property, and upon the death, insolvency or incapacity of an individual Beneficiary, such Beneficiary's Beneficial Interest shall pass to the legal representative of such Beneficiary. A Beneficiary shall have no title to, or any right to possess, manage or control, the Liquidating Trust Assets, or any portion thereof or interest therein, except as expressly provided herein. No surviving spouse, heir, or devisee of any deceased Beneficiary shall have any right of dower, homestead or inheritance, or of partition, or any other right, statutory or otherwise, in the Liquidating Trust Assets, but the whole title to all the Liquidating Trust Assets shall be vested in the Trust Administrator and the sole interest of the Beneficiaries shall be the rights and benefits provided to such persons under this Agreement and the Plan.

      5.3    <u>Transferability</u>. Interests in the Liquidating Trust shall not be transferred or assigned by a holder of an interest in the Liquidating Trust except by will, intestate succession or operation of law, *provided, however*, that a Holder of such interests may abandon such interests back to the Liquidating Trust at its sole discretion.

## ARTICLE VI
## Distributions

      6.1    <u>Distributions under the Plan</u>. The Trust Administrator shall make payments to Holders of Claims and Distributions to the Beneficiaries as Holders of Allowed Claims pursuant to the terms the Plan, the Confirmation Order, and this Agreement.

      6.2    <u>Distributions on Account of Disputed Claims</u>. Except as otherwise provided in a Final Order or as agreed by the relevant parties, Distributions on account of disputed Claims that become allowed after the Agreement Effective Date will be made by the Trust Administrator at such periodic intervals as the Trust Administrator determines to be reasonably prudent.

      6.3    <u>No Distributions Pending Allowance</u>. Notwithstanding anything in the Plan to the contrary: (a) no Distribution will be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim, and (b) unless determined otherwise by the Trust Administrator, no Distribution will be made to any entity that holds both (i) an Allowed Claim and (ii) a Disputed Claim until such entity's Disputed Claim(s) have been resolved by settlement or Final Order.

      6.4    <u>Objection Deadline</u>. The Trust Administrator will file all objections to Disputed Claims of Beneficiaries, and will file all motions to estimate unsecured Claims under section 502(c) of the Bankruptcy Code, on or before one hundred eighty (180) days after the Agreement Effective Date of the Plan, *provided, however*, that the Trust Administrator may request that the Bankruptcy Court extend such date.

      6.5    <u>Creditors Trust Disputed Claims Reserve</u>. On and after the Agreement Effective Date, the Liquidating Trust will maintain, as part of the Liquidating Trust Disputed Claims Reserves (as defined in Section 3.7), such Cash as the Trust Administrator estimates to be reasonably necessary to satisfy the Distributions required to be made under the Plan.

      6.6    <u>Settling Disputed Claims</u>. The Trust Administrator is authorized to settle or withdraw any objections to any Disputed Claims following the Agreement Effective Date

gj11dj0100

without need for approval of the Bankruptcy Court.  In the event the Bankruptcy Case is closed or dismissed prior to the Trust Administrator resolving all Disputed Claims, the Trust Administrator may assert such objections in Alaska Superior Court, or any other Alaska or federal court with proper venue deemed appropriate by the Trust Administrator.

6.7     Distributions in Cash.  The Trust Administrator will make any required Cash payments to the Holders of Beneficial interests: (a) in U.S. dollars by check, draft or warrant, drawn on a domestic bank, or by wire transfer from a domestic bank, and (b) by first-class mail (or by other equivalent or superior means as determined by the Trust Administrator).

6.8     Unclaimed Distributions.  Any Beneficiary that does not assert a Claim pursuant to the Plan or this Agreement for an undeliverable Distribution within 180 days after the later of (i) the Agreement Effective Date and (ii) the last date on which a Distribution was deliverable to such Holder will have its Claim for such undeliverable Distribution deemed satisfied, waived and released and will be forever barred from asserting any such Claim against the Debtors, the Post-Effective Date Debtors, and the Liquidating Trust and its respective property. In such cases, unclaimed Distributions will be maintained for redistribution to other claimants entitled to Distributions under the Plan.  Nothing contained in this Agreement or the Plan shall require the Trust Administrator or any third party disbursing agent to attempt to locate any Holder of an Allowed Claim.

6.9     Setoff.  Nothing contained in the Plan shall constitute a waiver or release by the Liquidating Trust of any right of setoff or recoupment the Debtors or Liquidating Trust may have against any Creditor. To the extent permitted by applicable law, the Trust Administrator may, but is not required to, set off or recoup against any Claim and the payments or other Distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date that the Debtors or the Liquidating Trust may have against the Holder of such Claim.

6.10    Taxes.  Pursuant to section 346(f) of the Bankruptcy Code, the Trust Administrator will be entitled, but not required, to deduct and withhold any federal, state, or local taxes from any payments made with respect to Beneficiaries, as appropriate. All such amounts withheld shall be treated as amounts distributed to such Beneficiary for all purposes of this Agreement. The Trust Administrator is authorized to take all actions necessary to comply with applicable withholding and recording requirements. Notwithstanding any provision of the Plan, each Beneficiary that has received a Distribution of Cash under the Plan will have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such Distribution. For tax purposes, Distributions received in respect of any Claim will be allocated first to the principal amount of such Claim, with any excess allocated to unpaid accrued interest.

6.11    De Minimis Distributions.  If any interim Distribution under the Plan to a Beneficiary would be less than $50.00, the Trust Administrator may withhold such Distribution until a final Distribution is made to such Holder.

gj11dj0100

**ARTICLE VII**
**Removal or Resignation of the Trust Administrator**

7.1    <u>Removal of the Trust Administrator</u>. The Trust Administrator may be removed for "cause" upon order of the Bankruptcy Court after notice and opportunity for a hearing, provided that only a Beneficiary may seek to remove the Trust Administrator. For purposes of this Agreement, the term "cause" shall mean (a) the Trust Administrator's gross negligence, willful misconduct, or willful failure to perform its duties under the Plan, the Confirmation Order, and this Agreement; or (b) the Trust Administrator's misappropriation or embezzlement of any Liquidating Trust Assets or the proceeds thereof. If a Trust Administrator is removed for cause, such Trust Administrator shall not be entitled to any accrued but unpaid fees, reimbursements, or other compensation under this Agreement or otherwise. If the Trust Administrator is removed by the Bankruptcy Court other than for "cause," or is unwilling or unable to serve (x) by virtue of its inability to perform its duties under this Agreement due to death, illness, or other physical or mental disability; or (y) for any other reason whatsoever other than for "cause," subject to a final accounting, the Trust Administrator shall be entitled to all accrued and unpaid fees, reimbursement, and other compensation, to the extent incurred or arising or relating to events occurring before such removal, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Trust Administrator.

7.2    <u>Resignation of the Trust Administrator</u>. The Trust Administrator has an absolute right to resign as Trust Administrator at any time by giving prior written notice thereof to the Bankruptcy Court (the "**Notice**") and such resignation shall be effective sixty (60) days after the date of such Notice, unless an earlier effective date is allowed by the Bankruptcy Court. Upon the resignation effective date, the Trust Administrator shall not have any further duties or responsibilities under this Agreement or otherwise. If the Trust Administrator resigns from its position hereunder, subject to a final accounting, it shall be entitled to all accrued unpaid fees, reimbursement, and other compensation to the extent incurred or arising or relating to events occurring before such resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Trust Administrator.

7.3    <u>Successor to the Trust Administrator</u>. In the event of the resignation, removal, or death of the Trust Administrator, the Post-Effective Date Debtors shall designate a disinterested person to serve as the successor Trust Administrator. The Post-Effective Date Debtors shall cause a notice identifying the successor Trust Administrator along with an affidavit of disinterestedness from such proposed successor Trust Administrator to be promptly sent to the Beneficiaries. The successor Trust Administrator, without any further act, will become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor.

**ARTICLE VIII**
**Effect of the Agreement on Third Parties**

8.1    There is no obligation on the part of any person dealing with the Post-Effective Date Debtors, the Trust Administrator, or the Trustee Professionals, to see to the application of the money or other consideration paid or delivered to the Trust Administrator, or any agent of the Trust Administrator, or to inquire into the validity, expediency, or propriety of any such

gj11dj0100

transaction, or the authority of the Trust Administrator, or any agent of the Trust Administrator, to enter into or consummate the same, except upon such terms as the Trust Administrator may deem advisable.

## ARTICLE IX
### Waiver

9.1    No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto.  Resort to one form of remedy shall not constitute a waiver of alternative remedies.

## ARTICLE X
### Termination of the Agreement and Amendment

10.1    <u>Termination of the Agreement</u>.  This Agreement (other than Section 4.10, 4.14 and related provisions) shall terminate and the Liquidating Trust shall dissolve and terminate and be of no further force or effect upon the earlier to occur of (i) the final Distribution of all monies and Liquidating Trust Assets in accordance with the terms of this Agreement, the Plan, and Confirmation Order; or (ii) entry of a Final Order of the Bankruptcy Court terminating and dissolving the Trust Administrator as provided under the terms of this Agreement and the Plan. The Trust Administrator will not unduly prolong the duration of the Liquidating Trust and will at all times endeavor to resolve, settle or otherwise dispose of all Claims, Liquidating Trust Liabilities, and Liquidating Trust Assets to effect Distributions to Beneficiaries in accordance with the terms hereof, the Plan and Confirmation Order and to terminate the Liquidating Trust as soon as practicable in a prompt and timely fashion.  In the event that the Trust Administrator elects to terminate the Liquidating Trust, it shall provide twenty (20) days' notice thereof to each of the Beneficiaries.  Upon the expiration of such 20-day period, unless extended by agreement of the Trust Administrator and one or more Beneficiary or order of the Bankruptcy Court, the Trust Administrator shall cease to act as the Trust Administrator such that the Trust Administrator shall not have any further duties or responsibilities under this Agreement or otherwise.

10.2    <u>Full Distribution Award</u>.  In the event that the Trust Administrator liquidates and distributes the Liquidating Trust Assets such that (i) there is a full and final Distribution of all monies and Liquidating Trust Assets in accordance with the terms of this Agreement, the Plan, and Confirmation Order, with all Beneficiaries receiving a full Distribution; and (ii) funding from the Members of Debtor Wards Cove Packing Company is repaid in full, the Trust Administrator is authorized to donate the balance of the Liquidating Trust Assets to a Qualifying Charity, less thirty three percent (33%) of the balance of the Liquidating Trust Assets, which the Trust Administrator shall be entitled to retain as an award.

10.3    <u>Amendment of the Agreement</u>.    Except as otherwise set forth herein, any provisions of this Agreement may be amended, modified, terminated, revoked, or altered only in writing pursuant to an order of the Bankruptcy Court.  Notwithstanding this Section 10.2, any amendments to this Agreement shall not be inconsistent with the Plan or the purpose and intention of the Liquidating Trust to liquidate in an expeditious but orderly manner the

gj11dj0100

Liquidating Trust Assets in accordance with Treasury Regulations Section 301.7701-4(d) and this Agreement.

## ARTICLE XI
## Miscellaneous

11.1    <u>Intention of Parties to Establish the Liquidating Trust</u>.  This Agreement is not intended to create, and shall not be interpreted as creating, an association, partnership, or joint venture of any kind.  It is intended as a trust to be governed and construed in all respects as a trust.

11.2    <u>Filing Documents</u>.  A copy of this Agreement and all amendments thereof shall be maintained in an office or residence of the Trust Administrator and shall be available for inspection by the Beneficiaries.

11.3    <u>Books and Records</u>.

(a)    The Post-Effective Date Debtors shall provide the Trust Administrator with reasonable access to all books and records of the Debtors and the Post-Effective Date Debtors, and shall instruct any third parties or professionals possessing such books and records (including computer generated or computer maintained books, records and data, legal and accounting files maintained by any professional of the Debtors and other of the Debtors' books and records maintained by or in the possession of third parties), to turn over or permit access to (at the election of the party to whom the request is made) such books and records as may be reasonably requested by the Trust Administrator, provided that the Trust Administrator shall only request such books and records or access thereto to the extent reasonably necessary to the Trust Administrator's performance of its duties hereunder.

(b)    The Liquidating Trust will maintain reasonably good and sufficient books and records with respect to matters related to the Liquidating Trust Functions. The Trust Administrator may, upon at least 30 days prior written notice to the Post-Effective Date Debtors of the proposed destruction of such records and without Bankruptcy Court approval, destroy any documents that each believes are no longer required to effectuate the terms and conditions of the Plan.

(c)    <u>Tax Identification Numbers</u>.  The Trust Administrator may require any Beneficiary to furnish to the Trust Administrator, (i) its employer or taxpayer identification number as assigned by the Internal Revenue Service, and (ii) such other information, records or documents necessary to satisfy the Trust Administrator's tax reporting obligations (including certificates of non-foreign status).  The Trust Administrator may condition the payment of any Distribution to any Beneficiary upon receipt of such identification number and requested documents.

11.4    <u>U.S. Trustee Fees and Post-Confirmation Reports</u>.  After the Effective Date, the Trust Administrator shall pay any statutory fees due for the post-Effective Date period pursuant to 28 U.S.C. § 1930(a) and such fees shall be paid until entry of a Final Decree or an order

---

LIQUIDATING TRUST AGREEMENT

gj11dj0100

dismissing the Bankruptcy Case. The Trust Administrator shall not be responsible for any statutory fees due up to and including the pre-Effective Date period of the Plan.

11.5   Privilege. In connection with the Trust Administrator's reasonable requests, the Post-Effective Date Debtors shall provide to the Trust Administrator (or such professionals designated by the Trust Administrator) copies of non-privileged documents and other information in connection with its investigation of the Liquidating Trust Assets and Liquidating Trust Liabilities. Upon the request of the Trust Administrator, the Post-Effective Date Debtors shall also instruct their environmental counsel and insurance counsel to provide to the Trust Administrator all documents, including privilege documents, regarding the Liquidating Trust's environmental liabilities and insurance claims and coverage.

11.6   Valuation of the Liquidating Trust Assets. The Trust Administrator, in reliance upon such professionals as the Trust Administrator may retain, may make a good faith valuation of the Liquidating Trust Assets. Such valuation shall be made publicly available from time to time (by filing a report on the Bankruptcy Court docket or otherwise), to the extent relevant, as reasonably determined by the Trust Administrator in reliance on its professionals, and such valuation shall be used consistently by all parties, including, without limitation, the Liquidating Trust, the Post-Effective Date Debtors, and Beneficiaries, for all purposes, including United States federal income tax purposes.

11.7   Governing Law. THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ALASKA, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

11.8   Severability. If any one or more of the provisions herein, or the application thereof in any circumstances, is held invalid, illegal, or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision in every other respect, and of the remaining provisions, shall not be in any way impaired or affected. In such event, there shall be added as part of this Agreement a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable. The Agreement Effective Date of the added provision shall be the date upon which the prior provision was held to be invalid, illegal, or unenforceable.

11.9   Entire Agreement. This Agreement, the Plan, and the Confirmation Order constitute the entire agreement of the Parties and there are no representations, warranties, covenants, or obligations except as set forth herein or therein. This Agreement, the Plan, and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the Parties hereto, relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the Beneficiaries and the Parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

gj11dj0100

11.10   <u>Jurisdiction; Venue</u>.   Each party hereto irrevocably agrees that any suit, action, or proceeding with respect to this Agreement shall be brought in the United States Bankruptcy Court for the District of Alaska, and by execution and delivery of this Agreement, each party (a) irrevocably submits to each such jurisdiction and venue, (b) waives, to the fullest extent permitted by law, any objection that it may have to the laying of the venue of any such suit, action, or proceeding brought in such court has been brought in an inconvenient forum, and (c) agrees that final judgment in any such suit, action or proceeding brought in such a court shall be conclusive and binding upon it and may be enforced in any court to the jurisdiction of which such party is subject by a suit upon such judgment, provided that service of process is effected as otherwise permitted by law.

11.11   <u>Notices</u>.   Unless otherwise expressly specified or permitted by the terms hereof, any notice, request, submission, instruction or other document to be given hereunder by a party shall be in writing and shall be deemed to have been given, (a) when received if given in person, (b) upon delivery, if delivered by a nationally known commercial courier service providing next day delivery service (such as Federal Express), or (c) upon delivery, or refusal of delivery, if deposited in the U.S. mail, certified or registered mail, return receipt requested, postage prepaid:

**If to the Trust Administrator, addressed as follows:**

Eric D. Orse
Orse & Company, Inc.
1932 1ˢᵗ Avenue, Suite 1088
Seattle, WA 98101

With a copy to its counsel:

Brian C. Free
Hillis Clark Martin & Peterson, P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104

**If to the Post-Effective Date Debtors, addressed as follows:**

Lance Blair
Wards Cove Packing Company, LLC
2510 W Casino Road, Suite B
Everett, WA 98204

With a copy to its counsel:

Thomas A. Buford
Christine M. Tobin-Presser
Bush Kornfeld LLP
601 Union Street, Suite 5000
Seattle, WA 98101

or to such other individual or address as a party hereto may designate for itself by notice given as herein provided.

LIQUIDATING TRUST AGREEMENT

gj11dj0100

11.12 <u>WAIVER OF JURY TRIAL</u>.    EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED THEREBY.

11.13 <u>Further Assurances</u>. Each Party hereto (and its respective successors and assigns) shall, upon the Trust Administrator's reasonable request, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such further instruments, and do or cause to be done, such further acts, as may be necessary to carry out the purposes of this Agreement and to vest in the Trust Administrator the powers and duties contemplated hereunder.

11.14 <u>Exculpatory Provisions and Survival Thereof</u>.  Whether or not expressly therein so provided, any and all exculpatory provisions, immunities and indemnities, and any limitations and negations of liability contained in this Agreement, in each case inuring to the benefit of the Trust Administrator, shall survive (i) the termination or revocation of this Agreement, and (ii) as to any person who has served as Trust Administrator, the resignation or removal of such person as Trust Administrator.

11.15 <u>Conflicts</u>.  In the event of any inconsistency between the Plan or Confirmation Order, on the one hand, and this Agreement, on the other, the terms and provisions of the Plan or Confirmation Order shall govern.

11.16 <u>Headings</u>.  The headings of the various Articles and Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.17 <u>Successors and Assigns</u>.  All covenants and agreements contained herein shall, as applicable, be binding upon, and inure to the benefit of the Beneficiaries, the Trust Administrator and its successors, and the Debtors and its successors, and the Post-Effective Date Debtors and its successors, all as herein provided.

11.18 <u>Separate Counterparts</u>.  This Agreement may be executed by the Parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

*[Signature page follows]*

gj11dj0100

IN WITNESS WHEREOF, the undersigned duly authorized officers have executed and acknowledged this Agreement on behalf of their respective Parties as of the date first above written.

**ORSE & COMPANY, INC.**

By: _____
      Eric Orse
      President

**WARDS COVE PACKING COMPANY, LLC**

By: _____
      Lance Blair
      Authorized Representative

**TOP NOTCH HOLDINGS, LLC**

By: _____
      Lance Blair
      Authorized Representative

gj11dj0100